Filed 10/9/13  In re Dominic L. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re DOMINIC L., a Person Coming Under the Juvenile Court Law. | D063958 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J517967) |
| v. | |
| LESLIE L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Cynthia Bashant,

Judge.  Affirmed.


Katherine A. Clark, under appointment by the Court of Appeal, for Defendant and

Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County

Counsel and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Leslie L. appeals a juvenile court order terminating her parental rights to her minor son, Dominic L., under Welfare and Institutions Code[1] section 366.26. Leslie challenges the sufficiency of the evidence to support the court's finding the beneficial parent-child relationship exception to adoption did not apply to preclude terminating parental rights. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2010, three-year-old Dominic became a dependent of the juvenile court under section 300, subdivisions (b) and (g) and was removed from Leslie's custody based on findings Leslie used heroin and methamphetamine, had a history of substance abuse and exposed Dominic to drugs and hypodermic needles in the home. Leslie was incarcerated and the whereabouts of Dominic's father were unknown. The court placed Dominic in foster care and ordered reunification services for Leslie.

Leslie had a criminal history involving drugs, burglary and crimes of violence. Her parental rights to another child had been terminated several years earlier. She completed a drug treatment program, but relapsed.

After Leslie was released from custody, she enrolled in a 12-month residential drug treatment program at the San Diego Rescue Mission and had weekly visits with Dominic. She was committed to her recovery and was strongly motivated to keep Dominic in her life. Leslie was in therapy, completed a 15-week parenting class and tested negative for drugs. Dominic had a close relationship with his foster parents. He was in therapy, and said he did not want to

---

[1] Statutory references are to the Welfare and Institutions Code.

2

live with Leslie. The therapist interpreted this as showing Dominic's fear and anxiety due to his experiences when he was in Leslie's care.

Leslie was visiting Dominic three times a week, and one visit a week was unsupervised. When visitation expanded, Dominic became increasingly angry, sad, confused and stressed. He was particularly confused about where he would live. Although Dominic loved Leslie and enjoyed visits with her, he said he wanted to live with his foster parents, and asked if Leslie could move in with them.

Dominic's foster parents expressed their concern to his court-appointed special advocate (CASA) that Leslie had promised Dominic they would soon reunify. The visitation monitor reported Dominic voiced his fear of being removed from his foster home. The CASA observed that Leslie cared very much for Dominic, but she struggled to parent him at times. According to Dominic's teacher's aide, Dominic had recently become more aggressive. The CASA said Dominic's confusion about his living situation was negatively affecting him.

At the 12-month review hearing, the court found Leslie had made substantive progress with her case plan and ordered six more months of services for her. The court authorized interactive therapy for Leslie and Dominic and gave the social worker discretion to expand visits with the concurrence of Dominic's therapist and minor's counsel.

Leslie's visits with Dominic expanded, and he became "torn" between his mother and his foster parents. He began having difficulty transitioning back to his foster parents after visits with Leslie. On two occasions, Dominic had a severe negative reaction to leaving Leslie. He lost his voice from crying and sobbed inconsolably. In February 2012, Dominic began a

trial placement with Leslie at the San Diego Rescue Mission. At the 18-month hearing, the court placed Dominic with Leslie and ordered family maintenance services.

Less than two weeks later, Leslie was discharged from the San Diego Rescue Mission after testing positive for methamphetamine. The San Diego County Health and Human Services Agency (Agency) was belatedly notified, and the whereabouts of Leslie and Dominic were unknown for seven months. In November 2012, Leslie was arrested and Dominic was taken to Polinsky Children's Center. Leslie admitted she had been using methamphetamine, and she had not enrolled Dominic in school because she wanted to avoid being apprehended.

Agency filed a supplemental petition under section 387, seeking to remove Dominic from Leslie's custody as a result of her relapse, discharge from drug treatment, arrest, and failures to participate in services, communicate with Agency and enroll Dominic in school. Because Leslie had received 18 months of services, Agency recommended the court set a hearing under section 366.26 to select and implement a permanent plan for Dominic. Dominic told a therapist he missed Leslie, and also said Leslie's boyfriend, with whom they had been living, slapped and punched him all the time. Leslie admitted using methamphetamine intravenously, and could not explain why she relapsed. The court detained Dominic in out-of-home care.

When Leslie was released from custody, she resumed visits with Dominic. The maternal grandfather, who had been unaware he had a grandson, expressed an interest in having Dominic placed with him. Agency submitted an evaluation of his home in Nevada under the Interstate Compact on the Placement of Children.

4

At the settlement conference, the court sustained the allegations of the supplemental petition and placed Dominic in foster care. The court set a selection and implementation hearing under section 366.26.

Dominic was moved to two different foster homes. He was having weekly visits and telephone calls with Leslie. He was angry, sad and withdrawn after visits with her, and he misbehaved. Dominic had no interest in speaking to the maternal grandfather, who was still being considered for placement.

In a report prepared for the selection and implementation hearing, social worker Lisa Olimpio recommended the court terminate parental rights and order adoption as Dominic's permanent plan. She assessed Dominic as both generally and specifically adoptable. Olimpio supervised four visits between Dominic and Leslie, noting Leslie was loving and appropriate with him. Dominic had a positive relationship with Leslie and often sought physical affection from her. He told Leslie he loved her and asked if he could go home with her. Although Dominic was not upset when visits ended, his caregivers reported he was negative and unruly after visiting Leslie. Olimpio noted that although Leslie knew Dominic wanted to return to her care, she was unable to remain sober, achieve stability or attend to Dominic's educational, medical or dental needs. Olimpio was concerned about Leslie's prior unsuccessful attempts to treat her drug addiction, her quick relapse once Dominic was placed with her and her decision to abscond with him to evade the Agency.

Dominic appeared to believe he would be returned to Leslie's custody. He remained confused about his living situation, alternating between not wanting to be separated from his caregivers and stating the caregivers were not his family and their home was not his home. He

5

then asked the foster father if he would be his dad.  In Olimpio's opinion, Dominic was clearly struggling and desperately needed stability, which could only occur through adoption.

The CASA also recommended termination of parental rights and adoption for Dominic. During a visit she observed, Dominic and Leslie were warm and positive, but Dominic separated easily from Leslie at the end of the visit.  During the drive back to the foster home, Dominic expressed his extreme anger at Leslie, but he could not articulate a reason.

According to an addendum report, a psychological evaluation of Dominic showed he was depressed and anxious about what would happen to him and where he would live. Dominic said he was angry at Leslie because she left him, did not care about him and was not very nice.  He told the evaluator he wanted to live with his foster family.  In the evaluator's opinion, Dominic was beginning to see the foster mother as the mother figure in his life.

Dominic talked to his therapist about the bad choices Leslie made, and he described how she became angry and grabbed his arm when he tried to wake her up.  Dominic said he would be sad to leave his foster home to go live with the maternal grandfather.  The therapist reiterated Dominic needed safety, security and predictability about his future.

At the contested selection and implementation hearing, Leslie testified she was currently enrolled in an outpatient drug treatment program and her drug tests had been negative for three months.  She attended Narcotics Anonymous meetings, had a sponsor and avoided friends who used drugs.  Leslie visited Dominic once a week.  He hugged her and called her "mom."  They played and read books together, and she sometimes helped him with his handwriting.  Leslie redirected Dominic's behavior when necessary.  She said Dominic sometimes had difficulty ending visits, and he seemed confused.  He told her he loved her.

6

According to Dominic's stipulated testimony, Dominic wanted to live with the foster parents and he wanted Leslie to move in with them. He did not want to live with the maternal grandfather. Dominic was scared because he did not know him.

Olimpio testified she had observed seven visits between Dominic and Leslie. Dominic was excited and happy to see Leslie and asked to go home with her. However, he was not sad or upset at the end of visits. Olimpio believed Leslie and Dominic had a bond, which was mostly positive. Dominic knew who his mother was because he had spent a substantial amount of time in her care, and he would be sad if he could no longer visit her. Although he saw Leslie as a parent figure during visits, he saw his foster mother as his mother on a daily basis. He did not ask for Leslie between visits. Stability was in Dominic's best interests, and Leslie could not provide him with that. Dominic's therapist also recommended permanency and stability for him.

After considering the evidence and arguments of counsel, the court found Dominic was likely to be adopted and none of the exceptions to adoption applied. The court terminated parental rights and referred Dominic for adoptive placement.

DISCUSSION

Leslie contends the evidence was insufficient to support the court's finding the beneficial parent-child relationship exception to adoption did not apply to preclude terminating her parental rights. She asserts she maintained regular visitation and contact with Dominic, had a loving, nurturing and bonded relationship with him and occupied a parental role in his life.

7

A

After reunification services are terminated, the focus of a dependency proceeding shifts from preserving the family to promoting the best interests of the child, including the child's interest in a stable, permanent placement that allows the caregiver to make a full emotional commitment to the child. (*In re Fernando M*. (2006) 138 Cal.App.4th 529, 534.) At the selection and implementation hearing, the court has three options: (1) terminate parental rights and order adoption as the permanent plan; (2) appoint a legal guardian for the child; or (3) order the child placed in long-term foster care. (*Ibid*.)

"Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 573.) If the court finds a child cannot be returned to his or her parent and is likely to be adopted if parental rights are terminated, it must select adoption as the permanent plan unless it finds termination of parental rights would be detrimental to the child under one of the specified statutory exceptions. (§ 366.26, subd. (c)(1)(A) & (B)(i)-(vi); *In re Erik P*. (2002) 104 Cal.App.4th 395, 401.)

Section 366.26, subdivision (c)(1)(B)(i) provides an exception to the adoption preference if termination of parental rights would be detrimental to the child because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." Courts have interpreted the phrase " 'benefit from continuing the . . . relationship' " to refer to a parent-child relationship that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security

8

and the sense of belonging a new family would confer.  If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated."  (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575; accord, *In re Jason J.* (2009) 175 Cal.App.4th 922, 936.)

To meet the burden of proof for this statutory exception, the parent must show more than frequent and loving contact, an emotional bond with the child or pleasant visits.  (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.)  The parent must show he or she occupies a parental role in the child's life, resulting in a significant, positive emotional attachment from child to parent.  (*Ibid*.; *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324.)

We review an order terminating parental rights for substantial evidence.  (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.)  If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we uphold those findings.  We do not consider the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence.  Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is substantial evidence supporting a contrary finding.  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53; *In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)  The parent has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order.  (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

B

Here, the evidence showed Leslie had regular visitation and contact with Dominic. However, Leslie did not meet her burden of showing there was a beneficial parent-child relationship sufficient to apply the exception of section 366.26, subdivision (c)(1)(B)(i).

Although Leslie had a positive relationship with Dominic and met his needs during visits, she was not able to ameliorate the risks that caused Dominic to become a dependent child. Leslie knew Dominic wanted to live with her, but she was unwilling or unable to put his needs before her own. Indeed, two weeks after having Dominic returned to her custody, Leslie relapsed on methamphetamine and then absconded with him for seven months. During this time, Leslie failed to attend to Dominic's educational, medical or dental needs, and allowed her live-in boyfriend to physically abuse him. Her unstable lifestyle caused Dominic to become depressed and anxious about what would happen to him and where he would live. In this regard, Leslie did not act in a parental role.

The evidence showed Dominic was happy and excited to see Leslie and their visits were positive and appropriate. However, "[a] biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) Moreover, although Dominic initially had difficulty separating from Leslie after visits, this behavior eventually abated, and was replaced by Dominic's ongoing confusion and anger toward her for mistreating and abandoning him. Dominic said he wanted to continue living with his foster family, and he viewed them as his parents. The love and affection Leslie shared with Dominic during visits was not enough to

10

show Leslie had a " 'significant, positive, emotional attachment' " to Dominic such that terminating the parent-child relationship would result in great harm to him. (*In re Jason J.*, *supra*, 175 Cal.App.4th at pp. 936-938; *In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.)

Further, Leslie did not show that maintaining the parent-child relationship outweighed the benefits of adoption for Dominic. In the opinions of the social worker, CASA and therapist, Dominic's need for stability, safety and permanency clearly outweighed any possible detriment that would be caused by severing the parental relationship. The court was required to, and did, weigh the strength and quality of the parent-child relationship, and the detriment involved in terminating it, against the potential benefit of an adoptive home for Dominic. We do not reweigh the evidence or substitute our judgment for that of the juvenile court. (*In re Casey D.*, *supra*, 70 Cal.App.4th at pp. 52-53.)

Contrary to Leslie's position, a permanent plan other than adoption would not serve Dominic's best interests because adoption is the only option that would provide him with the stability and permanence he so desperately needs. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1419 [Legislature has decreed guardianship is not in best interests of children who cannot be returned to their parents; only adoption affords the most permanent and secure alternative]; *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368-1369 [parents' preference to preserve family unit does not override best interests of minors in stability and security of adoptive home].) Substantial evidence supports the court's finding the beneficial parent-child relationship exception did not apply to preclude terminating parental rights.

11

DISPOSITION

The order is affirmed.


BENKE, Acting P. J.

WE CONCUR:


McDONALD, J.


AARON, J.