Filed 3/6/15  In re H.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re H.M., a Person Coming Under the Juvenile Court Law. | D066740 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J517056E) |
| v. | |
| DENISE M. et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of San Diego County, Michael Imhoff, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant Denise M.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant Angel N.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Ryan M. McGlinn for Respondent J.M.

Elizabeth Klippi for Minor.

Denise M. and Angel N. appeal the juvenile court's orders denying their petitions for modification under Welfare and Institutions Code[1] section 388, and terminating parental rights to their minor child H.M. under section 366.26.  Denise contends her circumstances had changed and returning H.M. to her care was in H.M.'s best interests. She argues reversal of the court's denial of her section 388 petition requires reversal of the court's order terminating her parental rights.  Angel contends delaying permanency planning to provide him with continued reunification services was in H.M.'s best interests and, alternatively, the beneficial parent-child relationship exception to adoption precluded termination of his parental rights.  We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

The record in this case includes a long history of involvement by the San Diego County Health and Human Services Agency (the Agency) with Denise and her five children as a result of domestic violence between Denise and her children's fathers and other men.  Denise first came to the Agency's attention in 2003 when it received a referral

---

[1]    Statutory references are to the Welfare and Institutions Code.

that she exposed her oldest child to serious, physical domestic violence. After many years of services, Denise's parental rights to her four oldest children were ultimately terminated in August 2013.[2] Denise became pregnant with H.M. during that dependency. Before her parental rights were terminated, Denise was hospitalized after Angel beat and raped her when she told him she was pregnant with his child. At the time of this hospitalization Denise told police Angel had been "physically and emotionally abusive to her almost constantly."

In April 2013, when H.M. was seven months old, Angel was arrested after Denise called the police to report Angel had pushed her down a short flight of stairs. As a result, the Agency filed a petition under section 300, subdivision (b), alleging H.M. was exposed to violent confrontations between her parents involving physical force. The petition also referred to domestic violence that occurred before H.M.'s birth, alleging Denise had an "extensive history of domestic violence relationships" that had resulted in the removal of H.M.'s siblings from her care and Denise was not compliant with the Agency's case plan in that ongoing dependency proceeding. At the contested detention hearing the juvenile court detained H.M. and ordered reunification services for Denise and Angel. Shortly thereafter, H.M. was placed in the licensed foster home at which her older half-sister resided.

In its report for the disposition and jurisdiction hearing, the Agency recommended reunification services for Angel, but not Denise. The Agency's social worker expressed

_____

2      Denise's four older children are not at issue in this appeal.

3

concern over Denise's failure to provide a current address and her continued involvement with Angel despite serious instances of domestic violence. At the conclusion of the contested disposition and jurisdiction hearing, the court declared H.M. a dependent of the juvenile court, continued her placement in foster care with her half-sister, and ordered continued services for Denise and Angel.

By the time of the six-month review hearing, H.M. was adjusted to her foster home and thriving there. She was also bonded to her four half-siblings, who by that time were all placed with H.M. in the same foster home.[3] Both parents were participating in services and had regular visitation with H.M. The social worker, however, recommended the court terminate services and set a permanency planning hearing. In the Agency's report, the family's social worker expressed concern about Denise and Angel's ongoing relationship despite a restraining order that precluded contact. Of note, Denise was arrested for physically assaulting Angel's younger brother at Angel's mother's home. Denise told the social worker she continued to see Angel because she relied on him for support after her parental rights to her four older children were terminated. Denise's therapist also terminated her services after finding out Denise lied to him about ending contact with Angel.

Angel denied he was the perpetrator of domestic violence and made little progress in therapy and domestic violence training. He also gave conflicting stories about continuing a relationship with Denise. Angel's therapist told the Agency's social worker

---

[3]     H.M.'s foster parents also requested de facto parent status before the six-month review hearing. The court granted the request after a contested hearing.

Angel had a chip on his shoulder and did not take any responsibility for his role in H.M.'s removal from parental custody. The social worker reported Angel "continues to blame [the Agency] for the removal of his child and has not demonstrated that he wants to stay away from [Denise.]"

Denise and Angel contested the Agency's recommendations to terminate reunification services and set a permanency planning hearing. After the contested hearing, the juvenile court found the Agency had provided the parents with reasonable services but they had not made substantive progress in their treatment plans. The court found there was not a substantial probability H.M. could be returned to parental custody within the next six months. The court terminated Denise's and Angel's reunification services and set a permanency planning hearing under section 366.26.

Thereafter, Denise and Angel both continued supervised visitation with H.M. Denise also continued therapy at her own expense. H.M.'s visits with both parents were positive, although the observing social worker described H.M. as having an anxious attachment to Denise. H.M. was passive when she was with her mother and did not show emotions in a recognizable pattern. Also in this time frame both the Agency's social worker and the foster family expressed concerns about Angel's aggressive behavior toward them. In its report for the permanency planning hearing, the Agency recommended the court terminate parental rights and stated no statutory exception to termination was applicable. The Agency also reported H.M.'s foster parents were in the process of adopting her four older half-siblings and were committed to adopting H.M. in the event Denise's and Angel's parental rights were terminated.

Before the permanency planning hearing, Angel filed a petition for modification under section 388 seeking to reinstate reunification services. The petition stated Angel had checked into a residential treatment program and had completed a 52-week domestic violence course. Angel asserted it was in H.M.'s best interests to grant his request so he could eventually reunify with H.M. Shortly after Angel filed his petition, Denise filed her own petition seeking to have H.M. placed in her care and to have her reunification services reinstated. Denise asserted she too had completed a domestic violence treatment program and had finally ended contact with Angel. Denise also asserted there had "been multiple complaints and at least one investigation done by the Foster Home Licensing regarding [H.M.'s] medical care while in the care of the current caregivers."

The Agency filed a report in response to the parents' petitions containing additional assessments by the family's social worker. The report stated H.M. began to experience age-appropriate separation anxiety when leaving her foster parents to visit Denise and Angel, and her anxiety had intensified recently. A screening assessed H.M. as emotionally reactive and anxious or depressed. A therapist visiting one of H.M.'s older siblings at the foster home also raised concerns about aggressive behavior by H.M. The Agency's social worker expressed concern about Denise's ongoing complaints about the foster family's care of H.M., which were all investigated and determined to be unfounded. The Agency's report applauded both parents' recent efforts to engage in services but, particularly with respect to Denise—who had a history of engaging in services and then regressing, questioned the parents' credibility and commitment to sustained change. The Agency continued to recommend termination of Denise's and

6

Angel's parental rights. The court set a hearing on the modification petitions for the same day as the permanency planning hearing.

At the hearing, the juvenile court received the Agency's reports into evidence and heard testimony from the social worker, Denise, and Angel. After consideration of the evidence and arguments of counsel, the juvenile court addressed the modification petitions. The court commended Denise on her recent efforts to improve her life, but concluded those efforts over the past 90 days were insufficient to show she had changed her circumstances enough to warrant placement of H.M. with her or reinstatement of reunification services. The court concluded Angel had adequately shown changed circumstances, but he had not carried his burden to show that delaying permanency to provide him additional reunification services was in H.M.'s best interests.

The court then addressed the termination of parental rights and permanency planning. The parties stipulated to the court's consideration of the evidence presented with respect to the petitions for modification. The court then heard brief additional testimony by the Agency's social worker and argument by counsel. The juvenile court found H.M. was generally and specifically adoptable and terminated parental rights. The court concluded any benefit to H.M. of a continued relationship with Denise and Angel was "greatly outweighed by her need for stability . . . which can only be achieved through adoptive placement."

DISCUSSION

I

Denise and Angel each contend the court erred by denying their section 388 modification petitions.

A

Under section 388, a party may petition the court to change, modify or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, there is a change of circumstances or new evidence, and the proposed change is in the child's best interests. (§ 388; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415-416.) Whether a previous court order should be modified and a change would be in the child's best interests are questions within the sound discretion of the juvenile court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) The order will not be disturbed on appeal unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. When two or more inferences can be reasonably deduced from the facts, we have no authority to reweigh the evidence or substitute our decision for that of the juvenile court. (*In re Stephanie M.*, at pp. 318-319.) In ruling on a modification petition, the court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

B

Denise's petition sought to have H.M. returned to her care and reunification services reinstated. Denise asserts she showed changed circumstances because she cut

8

off all contact with Angel, completed a 52-week domestic violence course and obtained housing. She further asserts the proposed modification was in H.M.'s best interests because H.M. lived with Denise for the first seven months of her life and knew Denise as her mother.

As the juvenile court found, however, Denise's petition and supporting documentation showed, at most, her circumstances were "changing," but had not changed. (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 47.) Denise had a long history of domestic violence resulting in the emotional abuse of H.M. and her older half-siblings. After successfully completing services and reunifying with her older children in her earlier dependency case, Denise returned to her pattern of domestic abuse and ultimately lost parental rights to her four older children. At the time of the hearing on her section 388 petition, Denise's progress consisted of 90 days of sustained therapy and no contact with Angel. This progress stood in stark contrast to the prior six years of failing to sustain a safe environment for her children. This evidence supported the juvenile court's finding that Denise had not shown changed circumstances. A petition like Denise's, alleging *changing* circumstances, promotes neither stability for the child nor the child's best interests because it would mean delaying the selection of a permanent plan to see if a parent, who has failed to reunify with the child, might be able to reunify at some future point. (*In re Casey D.*, at p. 47.) "Childhood does not wait for the parent to become adequate." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)

Even had Denise shown changed circumstances, she did not show modifying the court's earlier order by placing H.M. with her or delaying permanency planning to

provide Denise with additional reunification services was in H.M.'s best interests. At the time of the hearing on Denise's modification petition, the focus of the proceedings had shifted from family preservation to providing H.M. with a safe, stable and permanent home. (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309.) H.M. had been living with her caregivers from the time she was seven months old until she was two years old. She viewed them as her parents. Where, as here, " 'custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. That need will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child.' " (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.)

Although her visits with H.M. were consistent, Denise never progressed beyond supervised visits with H.M. The social worker described H.M. as having an anxious attachment to Denise. On the other hand, H.M. exhibited a "secure attachment to her" foster parents who she looked to fulfill her daily needs. At the time of the hearing, H.M. had been out of Denise's care for the majority of her young life because of Denise's inability to provide her with a safe home. H.M. desperately needed stability and permanence. The court evaluated all the evidence considering these needs and found H.M.'s best interests would not be served by removing her from a stable and loving home. The court acted within its discretion by denying Denise's modification petition.

Angel's contention that the juvenile court erred by finding it was not in H.M.'s best interests to delay permanency in order to provide him additional services likewise lacks merit. Like Denise, Angel's visits with H.M. were positive but he did not progress

10

beyond supervised visitation. H.M. had never lived with Angel and, at the time of the hearing, Angel was still in a residential treatment program and was not prepared to take custody of his daughter. The trial court's decision to deny Angel's petition to provide H.M. with permanency in her home was not arbitrary, capricious or patently absurd and will not be disturbed on appeal.

## II

Angel challenges the sufficiency of the evidence to support the court's finding the beneficial parent-child relationship exception of section 366.26, subdivision (c)(1)(B)(i), did not apply. He asserts he maintained regular visitation and contact with H.M., who would benefit from a parent-child relationship with her biological father.[4]

## A

As noted, after reunification services are terminated, the focus of a dependency proceeding shifts from preserving the family to promoting the best interests of the child, including the child's interest in a stable, permanent placement that allows the caregiver to make a full emotional commitment to the child. (*In re Fernando M.* (2006) 138 Cal.App.4th 529, 534.) At the selection and implementation hearing, the court has three options: (1) terminate parental rights and order adoption as the permanent plan; (2)

---

[4]     Denise does not separately challenge the juvenile court's termination of her parental rights, but instead asserts that if this court finds denial of her petition for modification was error, the termination of her parental rights must be reversed. Denise also asserts that if we conclude the juvenile court erred by terminating Angel's parental rights, her parental rights must also be reinstated. Because we find no error in the denial of her petition or the termination of Angel's parental rights, we do not address the termination of Denise's parental rights.

appoint a legal guardian for the child; or (3) order the child placed in long-term foster care.  (*Ibid.*)

"Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.)  If the court finds a child cannot be returned to his or her parent and is likely to be adopted if parental rights are terminated, it must select adoption as the permanent plan unless it finds a compelling reason for determining that termination of parental rights would be detrimental to the child under one or more of the enumerated statutory exceptions.  (§ 366.26, subd. (c)(1)(A) & (B)(i)-(vi); *In re A.A.* (2008) 167 Cal.App.4th 1292, 1320.)  "The parent has the burden of establishing the existence of any circumstance that constitutes an exception to termination of parental rights."  (*In re T.S.* (2009) 175 Cal.App.4th 1031, 1039.)  Because a selection and implementation hearing occurs "after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement."  (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

Section 366.26, subdivision (c)(1)(B)(i), provides an exception to the adoption preference if terminating parental rights would be detrimental to the child because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  We have interpreted the phrase " 'benefit from continuing the . . . relationship' " to refer to a parent-child relationship that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.  In other words, the court balances

12

the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and sense of belonging a new family would confer.  If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated."  (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575; accord *In re Jason J.* (2009) 175 Cal.App.4th 922, 936-937.)

To meet the burden of proof for this statutory exception, the parent must show more than frequent and loving contact, an emotional bond with the child or pleasant visits.  (*In re Jason J.*, *supra*, 175 Cal.App.4th at pp. 936-937.)  The parent must show he or she occupies a parental role in the child's life, resulting in a significant, positive emotional attachment from child to parent.  (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827; *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324.)  We review the court's finding regarding the applicability of a statutory exception to adoption for substantial evidence.  (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.)  We do not consider the credibility of witnesses, resolve conflicts in the evidence or weigh the evidence.  Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is substantial evidence supporting a contrary finding.  (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)

B

Angel maintained regular visitation and contact with H.M. and H.M. enjoyed her visits with Angel.  However, H.M. separated easily from Angel and there was no

evidence she was negatively impacted by his absence from her daily life. "A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive some benefit from continuing a relationship maintained during periods of visitation with the parent." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) Any positive bond, warmth and affection H.M. shared with Angel was insufficient to show she had a "significant, positive, emotional attachment" to him such that terminating the parent-child relationship would result in great harm to them. (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575; *In re Jason J.*, *supra*, 175 Cal.App.4th at p. 938.)

Angel did not show that maintaining the parent-child relationship outweighed the benefits of adoption for H.M. At the time of the permanency planning hearing, H.M. was about to turn two years of age and had been a dependent of the juvenile court for close to 18 months. She was thriving in the home of her foster parents, who were strongly committed to adopting her and her four older half-siblings. She was also strongly bonded to her half-siblings. H.M. is entitled to the stability, continuity and permanence that only an adoptive home can provide. The court was entitled to accept the social worker's opinion that the benefits of adoption outweighed the benefits of maintaining a relationship with H.M. (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 191 [child's interest in stable and permanent home is paramount once a parent's interest in reunification is no longer at issue].) The court was required to, and did, weigh the strength and quality of the parent-child relationship, and the detriment involved in terminating it, against the

14

potential benefits of an adoptive home for the minor.  Substantial evidence supported the court's finding that the beneficial parent-child relationship exception did not apply.

DISPOSITION

The orders are affirmed.


McDONALD, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.