[No. B184836. Second Dist., Div. Eight. Apr. 11, 2006.]

In re FERNANDO M., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
MARGARET M., Defendant and Appellant;
FERNANDO M., Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

530

## COUNSEL

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Merrill Lee Toole, under appointment by the Court of Appeal, for Appellant.

Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, and Steven E. Henry, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**COOPER, P. J.**—This appeal is from the termination of Margaret's (Mother) parental rights over Fernando. Mother and Fernando correctly argue that the juvenile court should have selected legal guardianship as Fernando's permanent plan instead of adoption because, notwithstanding the strong presumption in favor of adoption, the peculiar facts of this case demonstrate a compelling reason for finding that termination of parental rights would be detrimental to Fernando and exceptional circumstances warrant selecting legal guardianship as his permanent plan.

In the unpublished portion of the opinion, we find Mother and Fernando's argument regarding the Indian Child and Welfare Act has no merit. We shall reverse the juvenile court's order identifying adoption as Fernando's permanent plan.

## FACTUAL AND PROCEDURAL BACKGROUND

Fernando was born with a positive toxicology for alcohol and marijuana, and Mother had entered a voluntary maintenance plan, which proved unsuccessful. The court detained Fernando on July 28, 2004, when he was approximately four months old, and ordered him placed with maternal grandmother, Christina, who had been taking care of him.[1] Christina had called the police when Mother left Fernando with her for 11 days and disappeared. The Welfare and Institutions Code[2] section 300 petition, as sustained, indicated that Mother has a history of substance abuse, was incapable of caring for Fernando, left Fernando with Christina without providing for his care, and placed Fernando at risk of physical and emotional harm.

Initially, Mother did nothing to comply with her case plan, but eventually she entered a rehabilitation program and initiated visits with Fernando. Throughout Fernando's detention, he resided with Christina, who also cared for Fernando's two minor siblings, neither of whom was a dependent of the juvenile court.

There is no dispute that Christina provided excellent care or that Fernando has bonded with her. The Department of Children and Family Services (DCFS) consistently reported that Christina was able to deal effectively with

---

[1] Mother does not know the identity of Fernando's father.

[2] All undesignated statutory citations are to this code.

Fernando's special needs as a result of reactive airway disease and slight developmental delay. In January 2005, DCFS reported that Fernando was attached to Christina and that she was providing for his necessities and monitoring his medical needs. DCFS also reported that Christina "is doing a great job with complying with the case plan. She remains dedicated to caring for child Fernando . . . ."

In May 2005, DCFS reported that "Fernando has many special needs and requires stability and consistency in order to progress developmentally." DCFS also reported that the grandparents "love him [Fernando] very much. Fernando has become a part of their family." It was reported that Fernando bonded with his grandparents and that they "have a warm and affectionate relationship with Fernando. They are able to meet Fernando['s] special needs and provide him with a safe and stable home environment." DCFS opined that it was in Fernando's best interest to be adopted by his grandparents. The next month DCFS reported that it was in Fernando's best interest to be adopted by his grandmother. The report did not mention adoption by Fernando's grandfather other than to indicate that a spousal waiver was necessary in order to proceed with the adoption.

In August 2005, the juvenile court terminated Mother's parental rights and ordered adoption as Fernando's permanent plan. Christina and Mother had requested legal guardianship as Fernando's long-term plan. At that time, there was no dispute that Christina's husband was not willing to adopt and that Christina's adoption would require that he sign a spousal waiver.

At the section 366.26 hearing, Mother testified that she had been clean and sober for almost six months, had taken parenting classes, and visited with Fernando on the weekends. She testified there was a relationship between Fernando and his older siblings. Christina testified that she cared for Fernando and for Mother's two other children. Christina testified that Fernando "doesn't really know [Mother] that well, but he is starting to." Christina testified that she preferred to become Fernando's legal guardian rather than adopt him but that the social worker told her "if I didn't adopt Fernando, that he would be placed in the system to be adopted by someone else." Christina did not want to adopt because Fernando "belongs to my daughter, and I know that one day she will get him back." Christina also testified that Fernando had a very close relationship with his siblings and that the siblings regularly play together.

The court found that Mother does not have a parental relationship with Fernando because she waited until after the statutory six-month period had elapsed to appear in court and did not begin visiting Fernando until 10 weeks

before the section 366.26 hearing. The court then found that section 366.26, subdivision (c)(1)(D) was inapplicable because, even though Christina was a relative caretaker, no exceptional circumstances were present. The court explained its finding as follows: "this is a grandmother who has already taken care of two of this mother's kids already, and there's just·no exceptional circumstances." The court also found that Fernando is adoptable.

Mother and Fernando both appeal, arguing that the court should have selected legal guardianship as Fernando's long-term plan and that the court failed to comply with the Indian Child Welfare Act (ICWA). In the unpublished portion of the opinion, we shall summarize the facts with respect to the latter contention along with the discussion.

## DISCUSSION

### I. *Fernando's Long-term Plan*

#### A. *General Principles*

■ The following pertinent principles are well established. After reunification services have terminated, the focus of a dependency proceeding shifts from family preservation to promoting the best interest of the child including the child's interest in a "placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child. [Citation.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306 [19 Cal.Rptr.2d 544, 851 P.2d 826].) The purpose of a section 366.26 hearing is to "provide stable, permanent homes for" dependent children. (§ 366.26, subd. (b).) At a section 366.26 hearing the juvenile court has three options: (1) to terminate parental rights and order adoption as a long-term plan; (2) to appoint a legal guardian for the dependent child; or (3) to order the child be placed in long-term foster care. (§ 366.26, subd. (b).) Adoption is the preferred plan and, absent an enumerated exception, the juvenile court is required to select adoption as the permanent plan. (*In re Jasmine T.* (1999) 73 Cal.App.4th 209, 212 [86 Cal.Rptr.2d 128].) The burden falls to the parent to show that the termination of parental rights would be detrimental to the child under one of the exceptions. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809 [92 Cal.Rptr.2d 20].)

There are five circumstances that may present "a compelling reason for determining that termination [of parental rights] would be detrimental to the child. . . ." (§ 366.26, subd. (c)(1).) One is if "[t]here would be a substantial interference with a child's sibling relationship, taking into consideration the

nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(E).)

■ Another exception, under section 366.26, subdivision (c)(1)(D), applies if "[t]he child is living with a relative or foster parent who is unable or unwilling to adopt the child because of *exceptional circumstances*, that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment and the removal of the child from the physical custody of his or her relative or foster parent would be detrimental to the emotional well-being of the child." The subdivision (c)(1)(D) exception does not apply where the juvenile court makes a finding that grandparents are willing and able to adopt a child. (*In re Zachary G., supra*, 77 Cal.App.4th at p. 810.)

### B. *The Juvenile Court Applied the Incorrect Test in Evaluating the Subdivision (c)(1)(D) Exception*

Generally, we review the trial court's application of the exception to the termination of parental rights for substantial evidence. (*In re Zachary G., supra*, 77 Cal.App.4th 799, 809; *In re Derek W.* (1999) 73 Cal.App.4th 823, 827 [86 Cal.Rptr.2d 739].)[3] However, in this case, the court applied the incorrect legal test. We review de novo the interpretation of a statute, which is a question of law. (*Robin J. v. Superior Court* (2004) 124 Cal.App.4th 414, 420 [21 Cal.Rptr.3d 417].) The relevant facts are not disputed, and therefore the significance of the facts presents a question of law. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; see also *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541].)

In contrast to the general principles summarized above, the meaning of the phrase "exceptional circumstances" is not well defined. One court has held that "mere family preference is insufficient." (*In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1298 [7 Cal.Rptr.3d 153].) Similarly, "personal preference" of the potential adoptive parent had been held to be irrelevant. (*In re Jose V.* (1996) 50 Cal.App.4th 1792, 1801 [58 Cal.Rptr.2d 684].) Another court has held "the statutory 'exceptional circumstance' refers to circumstances that

---

[3] Other courts have applied an abuse of discretion standard. (See, e.g., *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351 [93 Cal.Rptr.2d 644].)

make the custodial relative unwilling or unable to adopt . . . ." (*In re Zachary G., supra*, 77 Cal.App.4th at p. 810.)

■ The phrase "exceptional circumstances" should be interpreted in light of the overarching purpose of section 366.26 and the overarching purpose of the dependency system—to achieve the best interest of the dependent child. (*In re Joshua S.* (2003) 106 Cal.App.4th 1341, 1350 [131 Cal.Rptr.2d 656].) If courts never considered family preference, the term "unwilling" as used in section 366.26, subdivision (c)(1)(D) would be rendered meaningless.

When Christina's attorney indicated that Christina was upset that she was threatened if she did not adopt Fernando the social worker would "try to find an adoptive home . . . and remove the child from her," the court responded, "It is not a threat, ma'am. It is the statute. It is the law. It is what the statute says. . . . The primary goal of a child is . . . permanency. The most permanent plan is adoption. That is the one we look to the strongest." The court continued: "The primary goal is permanency. The permanent plan is adoption. That is the one that the department looks to. Yes, there are exceptions, but the primary goal is to get this child adopted with a permanent family. [¶] Guardianship is another alternative, but it is not one the court looks to. It is up to the Department—it is up to the caretakers, but, clearly the goal is for us to adopt."

■ While the Legislature has expressed a preference for adoption over other permanent plans, this preference is overridden if one of the exceptions enumerated in subdivision (c)(1) of section 366.26 is found to apply. Contrary to the juvenile court's statement, the juvenile court should look to legal guardianship under appropriate circumstances. It is not clear from the record why the court announced that guardianship is "not one [alternative] the court looks to. . . ."

■ While it may be that the court's explanation was to serve only as a partial description of the statutory scheme, the court's stated rationale for its ruling also suggests the court applied an incorrect test when it evaluated the section 366.26, subdivision (c)(1)(D) exception. Specifically, the juvenile court found: "Exceptional circumstances don't arise here, and this is a grandmother who has already taken care of two of this mother's kids already, and there's just no exceptional circumstances." That was the court's sole rationale for its finding that the section 366.26, subdivision (c)(1)(D) exception did not apply to Fernando. The court made no finding that Christina was willing and able to adopt Fernando and what impact the threats to take Fernando from his grandmother had on her "unwillingness" to adopt. Nor did

the juvenile court consider the emotional upheaval Fernando would suffer as a result of being removed from the home he had lived in almost his entire life, a home the trial court had earlier indicated he would never leave. Prior to the section 366.26 hearing, the juvenile court stated "[h]e is going to be with his grandmother for the rest of his life. That is what is going to happen."

Contrary to the juvenile court's finding that no exceptional circumstances existed because Christina was also taking care of Fernando's two siblings, this evidence is evidence of "exceptional circumstances" as that term is used in section 366.26, subdivision (c)(1)(D). Fernando had been living with his siblings almost his entire life, and Mother and Christina's testimony that Fernando was bonded to his siblings was not disputed. Although the court did not consider the specific sibling exception, Fernando's relationship to his siblings is relevant in considering exceptional circumstances for purposes of the subdivision (c)(1)(D) exception. Fernando was raised with his two siblings in Christina's home almost his entire life. His siblings are not dependents of the juvenile court, and Christina has not adopted them but has provided care for them in Mother's absence. Allowing another family to adopt Fernando would mean that he no longer would share daily interactions with his siblings. Forcing Christina to adopt Fernando would mean that he would become his siblings' uncle. Even then, there would be nothing to prevent Mother from taking custody of her two other children, leaving Fernando alone with Christina.

Not only would adoption disrupt Fernando's relationship with his siblings, but it also would disrupt Christina's marriage. Christina's husband was never identified as Fernando's caretaker and his care of Fernando was not described in detail in the DCFS reports. Other than mentioning that Fernando was bonded to grandfather, Fernando's relationship with his grandfather is unclear. What is clear and undisputed is that, in order to adopt Fernando, a spousal waiver would be required. Adoption would not only interfere with Fernando's sibling relationships, but also would invade the private realm of Christina's marriage. The court not only ignored the marital implications but also failed to consider the potential effect of such an adoption on Fernando's relationship with his grandfather.

DCFS argues that "assuming arguendo that the maternal grandmother had been unwilling or unable to adopt, no one offered any, much less compelling evidence showing how removal from her care would detrimentally affect Fernando to such a degree as to outweigh his need for permanency through adoption." Both prongs of the argument are incorrect.

The record indicates Christina was initially unwilling to adopt. Even though she made statements that she would adopt, those statements always followed what she described as a threat that unless she adopt DCFS would find another adoptive family for Fernando. Indeed, not only does DCFS readily acknowledge its thinly veiled threats, but it argues that in telling Christina that Fernando "would be placed in the system for adoption," "the social worker did nothing less than honestly describe the reality of the choices before her [Christina]. Fernando's future cannot remain on hold while [Mother] vacillates between sobriety and inebriation." But Fernando's future is not dependent on Mother's conduct because as DCFS regularly reported, Christina provided excellent care and provided Fernando with a stable and loving home.

The second prong of DCFS's argument—that there was no compelling evidence that removal from Christina's care would detrimentally affect Fernando—also is incorrect. Since he was four months old, Fernando lived with Christina and his two siblings. DCFS reported that "Fernando has many special needs and requires stability and consistency in order to progress developmentally." Removing him from Christina's home and searching for another adoptive family would deprive him of this stability DCFS has already determined is necessary for him. There is no dispute regarding the intimacy of Fernando's daily associations with Christina and with his siblings and no basis in the record to conclude that severing these ties, the only ones Fernando knows, would not detrimentally affect his well-being. Although the burden of proof falls to Mother or Fernando, the record contains no contrary evidence. All of the evidence in the record indicates that it would be detrimental to Fernando to remove him from Christina's home.

In the juvenile court, DCFS argued, "I am asking the court to go forward today and terminate parental rights. If the grandmother changes her mind, and she wishes to be the one to adopt this child, then, [so be it]. She certainly would have the preference as the current caretaker and as a relative, but if she chooses not, then that would be her choice as well." We do not agree that, under the peculiar facts of this case, Christina should be coerced into either becoming "willing" to adopt Fernando or watching as someone else does. That neither serves Fernando's best interest nor follows the mandate of section 366.26, subdivision (c)(1)(D).

II. *The Indian Child Welfare Act Does Not Apply to This Case*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order terminating mother's parental rights identifying adoption as Fernando's permanent plan is reversed. The juvenile court is directed to enter a new order identifying legal guardianship as Fernando's permanent plan.

Rubin, J., and Flier, J., concurred.

---

[*]See footnote, *ante*, page 529.