Filed 10/29/15  In re D.E. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.E. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E063876 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J252851 & J252852) |
| v. | OPINION |
| D.E., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Kristina M. Robb, Deputy County Counsel for Plaintiff and Respondent.

1

D.E. (Father) appeals after the termination of his parental rights to Dea.E. (Child1) and De'v.E (Child2) at a Welfare and Institutions Code[1] section 366.26 hearing. Father contends on appeal as follows: (1) the juvenile court committed reversible error when it refused to accommodate Father's request to attend the section 366.26 hearing; (2) the juvenile court's order that the children were adoptable was not supported by substantial evidence and should be reversed; and (3) the juvenile court erred when it suspended Father's visitation without first making a detriment finding. We affirm the juvenile court's orders.

## FACTUAL AND PROCEDURAL HISTORY

A.     DETENTION

On January 15, 2014, Child1 (a girl; born December 2013) and Child2 (a boy; born June 2012) (collectively, "children") were detained from Father, and their mother C.M. (Mother),[2] by San Bernardino County Children and Family Services (Department).

On December 4, 2013, the Department received notice that Mother had given birth to Child1, and they had both tested positive for methamphetamine. Mother and Child1 were not bonding, and Mother appeared to be "'coming down'" from drugs.

The social worker located Mother and the children at a home that was boarded up and had a chain-link fence around it. Mother let the social worker in the house. There was no food in the home and only a small supply of formula for Child1. Mother had not

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Mother has not filed an appeal in this case.

taken Child1 to the doctor since her birth. Child2 was dirty. Mother had not sought out any services to obtain formula for Child1. Mother reported that she and the children were staying at the house and other places. Child2 had a burn mark on his hand that had blistered. Father was not at the home.

The social worker spoke with local police and found out that home was commonly used as a squatting place for drug users. The children were detained and placed in a foster home. Father was notified by telephone that the children were being detained.

At the time of the detention report, the Department only discovered that Father had prior convictions for attempted kidnapping. Father was granted visitation with the children one time each week for two hours.

On January 17, 2014, the Department filed a section 300 petition against Father and Mother (collectively, "parents") for both Child1 and Child2. It was alleged under section 300, subdivision (b), that Mother had a substance abuse problem and used methamphetamine during her pregnancy; Mother was engaged in domestic violence with Father placing the children at risk of abuse and neglect; Mother had not provided a safe or stable living environment for the children; Father reasonably should have known that Mother was abusing controlled substances and not providing a safe or stable living environment for the children; and Father engaged in domestic violence with Mother, putting the children at risk.

The detention hearing was held on January 21, 2014. Father was present at the hearing. He submitted on the detention report but requested that he be considered for placement. The juvenile court found a prima facie case and ordered the children be

3

detained from parents. An examination by the Desert Mountain Screening, Assessment, Referral and Treatment Program (SART) was ordered for the children. The juvenile court allowed weekly visits for two hours for Father with the children; the social worker was authorized to liberalize visitation.

B.    JURISDICTIONAL/DISPOSITIONAL REPORT AND HEARING

A jurisdiction/disposition report was filed on February 7, 2014. The Department conceded that there was not sufficient evidence there was domestic violence between the parents. It recommended reunification services be granted to Mother but not Father. Father's address was listed as "Unknown." The Department sought to add an additional allegation that Father had an extensive violent criminal history.[3]

In an interview on February 3, 2014, Father was aware that Mother had a substance abuse history but thought she had stopped using. Father had a history of violent criminal convictions including assault with a deadly weapon; second degree robbery; oral copulation by force against a person under the age of 18; and three kidnapping convictions. Since Father had been convicted of a violent felony, as defined in Penal Code section 667.5, subdivision (c), the Department alleged he was not entitled to reunification services pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(1). Father had three other children. Parents were never married but Father signed the birth certificates for Child1 and Child2 and held them out as his own children.

---

[3] The Department filed a first amended petition, which is not relevant here.

Child2 was behind in his speech. He did not speak at least 15 words and was not asking questions, as would be expected from a child his age. The children were submitted for SART exams. Since being placed in foster care, Child1 had gained weight and was eating well. Child1 had some trouble sleeping. Child2 liked to have someone sleep with him. When he was first placed in foster care, he appeared to be afraid of water and would scream at bath time.

During visitation, Father played with Child2 on the floor. Mother held Child1 for a majority of the visit and advised the children she was going to get them back.

On February 11, 2014, an additional information sheet was filed with the juvenile court. On February 6, 2014, Mother left a message for the social worker. She claimed that she had lied to the social worker in order to get the children back. Mother reported that Father was an alcoholic and drank every day. She reported that when he was drunk, he did all "types of stuff" including putting his hands on her. Mother claimed that Father had put his hands on her that night and threatened her.

On February 10, 2014, the social worker confronted parents about the phone call. Mother said that she and Father had an altercation but did not describe what had occurred. Father denied that he was an alcoholic or that he committed domestic violence. The Department was now requesting that the juvenile court find the domestic violence allegations true.

On March 10, 2014, the Department submitted a second amended section 300 petition, modifying the section 300, subdivision (b) allegations to provide that parents engaged in "domestic disputes." Further, it deleted that Father had a "violent" criminal

5

history, and only alleged a criminal history. It also added an additional allegation that Father had a substance abuse problem.

A hearing was held on March 11, 2014. The Department stated that it needed to have an address where Father was residing; he had refused to provide an address. Father advised the juvenile court that he stayed in two different places. Father was ordered to provide the addresses to the Department.

The jurisdiction/disposition hearing was held on March 17, 2014. Father was present. Mother and Father both filed waiver of rights forms admitting the allegations in the second amended petition. Mother had tested positive for amphetamines on March 11, 2014. Father was named the presumed father of both Child1 and Child2. The juvenile court found the allegations in the section 300 petition true except for the allegation in the second amended petition that Father had a substance abuse problem. Parents were both granted reunification services. Visitation was ordered supervised; it remained one time each week for two hours.

C.     SIX-MONTH REVIEW REPORT AND HEARING

The six-month status review report was filed on September 8, 2014. The Department recommended that family reunification services be terminated and that the section 366.26 hearing be set. The permanent plan was adoption. It listed Father's address as "unknown." Mother had three positive drug tests, and failed to test on two occasions, and did not participate in drug abuse counseling.

Father had been given a bus pass in order for him to attend his reunification services. Father had missed counseling sessions and was terminated from the program.

6

Father obtained his parenting education certificate. It was difficult to set up drug testing with Father because he was homeless. He was assigned an account to drug test but never tested. At several visitation meetings, Father smelled of alcohol and had bloodshot eyes. Father was sent a letter to a post office box he provided, that he was to participate in an outpatient substance abuse program. Father never enrolled in the services.

Father reported that he continued to be homeless. Father stated that he had been arrested twice during the reporting period but released. In April 2014 he was arrested while sitting in his car in a local park. On June 26, 2014, he was arrested for vandalism. Father provided very little information about the incidents. However, Mother advised the Department that Father had been coming to her house, hitting her and destroying her property. Father blamed Mother for the children being detained by the Department. He did not accept that his criminal past, and current living situation, were part of the problem. Father had failed to complete the court-ordered services.

As of the report date, Father had maintained regular visitation with the children except for one time when he did not show up and did not call. The visits between Father and Child2 had been "problematic." Child2 had been reported to bite, kick, punch, spit and scream during the visitation. During one of the visits, Father "spanked" Child2's hand. Visits between Father and Child1 were appropriate.

The children were on a waiting list for a SART examination. Some other testing was completed and the "[t]est results indicated no cautions or delays." Child1 was reported to roll, sit, crawl and pull herself up. She was reported as "busy and loves to get into things." Child2 was friendly to everyone and had no physical restrictions. It was

reported his speech appeared to be delayed. No remedial early educational services were recommended.

The foster mother advised the Department that Child2 had bouts of high-pitched screaming without tears when he would get upset. He also stuffed large amounts of food in his mouth and never stopped eating; he never appeared to get full. Child2 was also reported to eat non-edible items such as rocks and plastic. Foster mother was going to speak with Child2's primary care provider regarding the behavior. Child1 did not display any emotional or behavioral problems.

On September 9, 2014, the Department filed an addendum report. Since the prior report, Father had ceased visiting with the children. Father's last scheduled visit was on August 30, 2014, but he failed to show up. The social worker had an appointment with Father on September 5, 2014, to give him his bus pass, but he did not show up. Father's cellular telephone had been disconnected. A letter was sent to Father regarding his failure to show up for the missed visit and missed appointment.

The review hearing was conducted on September 17, 2014. Father was not present. Neither counsel for Mother nor counsel for Father had been able to contact either of them. Reunification services for parents were terminated. A section 366.26 hearing to terminate parental rights was set.

The juvenile court further held, "Visitation between parents and children shall be one time per month for two hours with 24 hour advance phone call, supervised by [the Department]." Father's counsel objected to the reduction of visits. The juvenile court then ruled, "Given the status of their participation and the focus now changing to the

8

children, the Court is going to keep the order as it is for monthly visits and I think there is a 24-hour call as well."

On November 3, 2014, counsel for the Department stated on the record that Father had been served with the notice of the section 366.26 hearing "in custody in Riverside."

D. SECTION 366.26 REPORTS

On January 13, 2015, a section 366.26 report was filed. The Department was seeking a 90-day continuance in order for the permanent plan of adoption to be implemented. More time was needed to locate a home for the "special needs of the children." Father's address was again listed as unknown.

Both children had been examined by Desert Mountain SART. Child1's developmental growth had been delayed but she was steadily developing. She said a few words and could pull herself up. She was able to eat solid food. She had been referred to SART for Occupational Therapy. Child2 had some developmental delays in speech. Child2 was able to say simple words but his vocabulary was limited. He was being toilet trained but did not demonstrate skills to vocalize that he needed to use the bathroom. Child2 had "remarkable hand and eye coordination skills." It was recommended that both children enroll in an early educational program.

Both Child1 and Child2 were reported to have "severe temper tantrums." Child2 had been reported to kick, scratch and bite when he was upset. They had been referred for Attachment-Based Therapy and Anger Management through the SART program. They were still in foster care and needed to be transitioned to an adoptive home. A prospective adoptive home had been identified and they were to meet with the children

9

on January 7, 2015. The Department requested an additional 90 days in order to effectuate the transition of the children.

The Department noted that Father "ceased contact" with the children the end of August 2014. The Department considered visitation contact by parents with the children detrimental due to parents' failure to maintain regular visitation and the need of the children to transition to a permanent adoptive home.

At a hearing held on January 15, 2015, the juvenile court granted the continuance of the section 366.26 hearing to April 15, 2015. Father was represented by counsel but not present. The juvenile court also stated that it was making an order to suspend the visits for the reasons stated in the report. The juvenile court stated, "Father has, I don't think, ever visited." Father's counsel corrected the juvenile court that Father had regularly visited the children until August 2014. The children's counsel clarified, "[Father] has not visited in five months. And Mother has only had two visits. Under those circumstances, I think it's appropriate to suspend visits." Mother's counsel objected that the failure to visit was not a "detriment." Father joined in the objection. Counsel for Child1 and Child2 stated that the juvenile court need not make a detriment finding because at that stage of the proceedings, visitation was discretionary. Further, the reason given in the report was that the Department was concerned about causing confusion or emotional turmoil with the children because they had not seen Father and Mother in "many, many months." The juvenile court ruled, "Given that the focus now is on the children, not the parents, and given that the last visit by the parents was in August,

10

the court is going to suspend the visits. [¶] It's not in the best interest of the children, especially now that they are trying to transition them to an adoptive home to have visits."

On April 13, 2015, an addendum report was filed in anticipation of the section 366.26 hearing. The Department recommended adoption. The children had been placed in the home of the prospective adoptive parents.

The prospective adoptive parents had met the children on January 13, 2015. They described their relationship with the children as "'very close and getting closer every day.'" The prospective adoptive mother loved them unconditionally. The prospective adoptive father reported the relationship was very rewarding and he loved hearing them call him "'daddy.'" The prospective adoptive mother wanted to adopt them because she loved them already. The prospective adoptive father stated, "'We're starting to see an attachment already. We thought about how much we could offer them, but they are offering us so much more. I love seeing them grow.'"

The Department reported that the children were well cared for and that the prospective adoptive parents could meet their needs. The prospective adoptive mother had two grown children from a previous marriage but they had no children together. She did not work outside the home. The prospective adoptive father was employed as an In Home Support Services provider, while he pursued his Bachelor's Degree. They were licensed foster parents. They shared the same heritage and culture as the children. They were working with SART. They wanted to adopt the children as soon as possible.

The children were attached to the prospective adoptive parents. There was clear and convincing evidence that the children would be adopted. The section 366.26 hearing

11

was continued until May 13, 2015, so that Father could be transported from the Riverside County Jail where he was in custody. The details of the efforts to have him transported will be discussed in more detail, *post*.

E.  SECTION 366.26 HEARING

The section 366.26 hearing was held on May 13, 2015. Father was not present. No testimony was heard. The juvenile court found there was clear and convincing evidence that the children were likely to be adopted. Mother's and Father's parental rights were terminated. Notice of entry of judgment was filed on that day.

**DISCUSSION**

A.  RIGHT TO BE PRESENT AT SECTION 366.26 HEARING

Father contends that the juvenile court's order terminating parental rights needs to be reversed because the juvenile court held the hearing in his absence despite his request to be present.

1.  *ADDITIONAL FACTUAL BACKGROUND*

After the juvenile court granted a continuance of the section 366.26 hearing on January 15, 2015, Father filed a motion to set aside the continuance. He claimed he requested a transportation order from the Robert Presley Detention Center in order to be present at the hearing on January 15, but had heard nothing from the facility. On February 20, 2015, the juvenile court signed an "Order For Prisoner's Appearance At Hearing Affecting Parental Rights." It ordered that Father be transported to the section 366.26 hearing on April 15, 2015.

On March 18, 2015, the juvenile court received notice from the San Bernardino County Sheriff's Department denying transportation because he "[h]as pending court in Riverside." On April 15, 2015, the section 366.26 hearing was continued so that Father could be transported. He was reported to be incarcerated in Riverside County Jail. The juvenile court stated that it did not have the authority to have him transferred from the Riverside County Jail. Father's counsel noted that he may be serving a state prison sentence in county jail. Father's counsel was granted a continuance in order to try to get Father transported.

The juvenile court signed a transportation order on April 22, 2015. At the section 366.26 hearing, Father's counsel advised the juvenile court that she had been informed by the bailiff that Father was not transported for the hearing because he was in custody in Riverside on pending charges in that county. Father's counsel requested a continuance to after June 18, when Father indicated his pending Riverside case was to be heard. Counsel for the Department objected to the continuance, stating: "I note that the parents have not had visits since August of 2014. So I'm not sure, even if he was here to testify, what the value his testimony would have."

The juvenile court agreed. It found that based on the reports, the parents had not been participating in visitation or services. The juvenile court denied the continuance.

2.    *ANALYSIS*

Penal Code section 2625, subdivision (d) states in relevant part: "Upon receipt by the court of a statement from the prisoner or his or her attorney indicating the prisoner's desire to be present during the court's proceedings, the court shall issue an order for the

13

temporary removal of the prisoner from the institution, and for the prisoner's production before the court. . . . [N]o petition to adjudge the child of a prisoner a dependent child of the court pursuant to subdivision . . . (b) . . . of Section 300 of the Welfare and Institutions Code may be adjudicated without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent, or other person in charge of the institution, or his or her designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding." The California Supreme Court has interpreted this section to require both the prisoner and the prisoner's attorney be present at the hearing. (*In re Jesusa V.* (2004) 32 Cal. 4th 588, 623-624.)

There is no dispute that Father sought to be present at the hearing and that the juvenile court made an effort to have him present at the hearing. The authorities from the Riverside County Jail refused to transport him. Based on the language in Penal Code section 2625, subdivision (d), Father had a right to be present.

Father's absence from the section 366.26 hearing does not require automatic reversal. An incarcerated parent must show any claimed violation of his right to be present at the dependency hearing resulted in prejudice. (*In re Jesusa V.*, *supra*, 32 Cal.4th at pp. 625-626; see *In re Iris R.* (2005) 131 Cal.App.4th 337, 343.) In other words, the error is reversible only if it is reasonably probable the result would have been more favorable to Father absent the error. (*Jesusa V.*, at p. 625.)

14

At a section 366.26 hearing, the juvenile court is charged with determining the most appropriate permanent plan for a dependent child. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 50.) It must find by clear and convincing evidence the minor will likely be adopted if the parental rights are terminated. (*In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1164.) "The burden falls to the parent to show that the termination of parental rights would be detrimental" under exceptions to the termination of parental rights, such as a parental/child bond. (*In re Fernando M.* (2006) 138 Cal.App.4th 529, 534; see also *Casey D.*, at pp. 47-50.)

Here, the juvenile court chose to proceed based on its recognition that Father had not visited with the children for over six months. Father did not visit, send letters, or make any other attempt to communicate with the children after August 2014. At the section 366.26 hearing, Father's counsel did not call any witnesses; object to the admission of the Department's reports; or seek to cross-examine the social worker who prepared the reports. Father's counsel submitted on the Department's reports and lodged no objections. Further, in Father's motion to set aside the continuance, he only requested to be present at the hearing, and did not indicate he wanted custody of the children, or what evidence he had to present. Father provided nothing to the juvenile court, or to this court, as to what evidence or testimony he would have presented at the section 366.26 hearing to show it was detrimental to terminate his parental rights.

Moreover, it is inconceivable that Father could have shown it was detrimental to terminate his parental rights. Father was incarcerated on what it appears were assault

charges. He had an extensive prior criminal history. He had completed very few of his reunifications services.

Further, there was no showing of the any bond between Father and the children. Child1 was only in Father's custody for one month. Child2 was 19 months old when he was detained, but had been in the custody of Mother. The records provide no information as to the time that Father spent with Child2 before he was detained. Further, it was reported that when Father visited with Child2, Child2 would bite, kick, punch, spit and scream. There was no showing of any bond between Father and the children. By the time of the section 366.26 hearing, Father had not visited with the children for nine months.

Father has stated that he consistently visited until the end of August 2014. It was only after his incarceration—which he asserts was in September or October—did he cease visitation. He would have wanted to visit in the jail facility. The problem with his assertion was that Father failed to communicate with the Department. The Department was unable to provide visitation because Father failed to contact them. The Department repeatedly asked Father for contact information, including addresses where he was staying. They attempted to contact him by telephone, but his phone was disconnected. This is pure speculation as he has not stated what he would have proven at the hearing.

Finally, Father claims that there was "no immediate need here to terminate" his parental rights. However, by the time of the section 366.26 hearing, there had already been a 90-day continuance for the children to bond with the adoptive parents, and a 30-day continuance in order to try to transport Father to the section 366.26 hearing. These

16

were young children who deserved stability. (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1320 ["A section 366.26 hearing is designed to protect these children's compelling rights to have a placement that is stable, permanent, and allows the caretaker to make a full emotional commitment to the child"].) There is no reasonable probability the result would have been any different if Father had personally attended the hearing. Under the circumstances, Father's absence does not warrant reversal of the termination of his parental rights at the section 366.26 hearing.

B.     ADOPTION

Father contends that the juvenile court erred by finding the children were adoptable. He insists that the section 366.26 reports prepared by the Department were inadequate because they failed to provide assessments of how the prospective adoptive parents were dealing with the children's behavioral issues.

As previously stated, at a section 366.26 hearing, the juvenile court is charged with determining the most appropriate permanent plan for a dependent child. (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 50.) "Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.)

The juvenile court may not terminate parental rights unless it finds by clear and convincing evidence "that it is likely the child will be adopted . . . ." (§ 366.26, subd. (c)(1).) The clear and convincing evidence standard is a low threshold. "The court must merely determine that it is 'likely' that the child will be adopted within a reasonable time." (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292 [Fourth Dist., Div. Two].)

17

"Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649-1650.) "[I]n some cases a minor who ordinarily might be considered unadoptable due to age, poor physical health, physical disability, or emotional instability is nonetheless likely to be adopted because a prospective adoptive family has been identified as willing to adopt the child. Where the social worker opines that the minor is likely to be adopted based solely on the existence of a prospective adoptive parent who is willing to adopt the minor, an inquiry may be made into whether there is any legal impediment to adoption by that parent." (*Id.* at p. 1650; see also *In re I.W.* (2009) 180 Cal.App.4th 1517, 1526.)

"'On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order.'" (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1525.)

Here, the juvenile court's finding that the children were adoptable was not entirely clear. It does appear the juvenile court found they were specifically adoptable by the prospective adoptive parents. That decision is supported by the record. The prospective adoptive parents expressed that they were bonded to the children. They had every

18

intention of adopting them. They understood that there may be some behavioral issues, but agreed to work with the SART program to get the appropriate therapeutic services. There was no legal impediment to adoption; the Js were already licensed foster care parents.

Father claims that the reports were insufficient to show how the prospective adoptive parents were dealing with the behavioral issues previously reported by the Department. We disagree. The initial section 366.26 report detailed that the children had been referred for therapy through the SART program to deal with their temper tantrums, and Child1 was being provided with Occupational Therapy. In the addendum report, the Department attested that the prospective adoptive parents could meet the needs of the children. They were reported to be working with SART. Although there were no specific statements in the report how the prospective adoptive parents were dealing with the behavioral issues, the report did include that the prospective adoptive parents were very close to the children and loved seeing them grow. It certainly is a reasonable inference that the behavioral issues were not affecting the bond between the prospective adoptive parents and the children. The section 366.26 reports adequately addressed that the prospective adoptive parents were aware of the behavioral issues, but that they were willing to adopt the children. Based on the foregoing, the juvenile court properly determined that the children were likely to be adopted by the prospective adoptive parents and that there was no legal impediment to adoption.

19

C.      <u>TERMINATION OF VISITATION</u>

Father contends that the juvenile court erred by terminating visitation at the hearing on January 15, 2015, without first making a detriment finding.[4]  As for relief, he asks that if this court reverses the termination of his parental rights, that his visitation be reinstated.  We need not review the claim because we have upheld the juvenile court's order terminating Father's parental rights.  "When no effective relief can be granted, an appeal is moot . . . ."  (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315.)

**DISPOSITION**

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>MILLER                      </u>
                                            J.

We concur:

<u>RAMIREZ               </u>
                       P. J.

<u>CODRINGTON          </u>
                       J.

---

[4]  Section 366.21, subdivision (h) provides in pertinent part as follows:  "In any case in which the court orders that a hearing pursuant to section 366.26 shall be held, it shall also order the termination of reunification services to the parent or legal guardian. The court shall continue to permit the parent or legal guardian to visit the child pending the hearing unless it finds that visitation would be detrimental to the child."