Filed 5/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Samantha H., a Person Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> M.M., <br><br>     Defendant and Appellant. | B300065 <br><br> (Los Angeles County Super. Ct. Nos.  DK23919A |

APPEAL from the judgment of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Jeanette Cauble, Principal Deputy County Counsel, for Plaintiff and Respondent.

Mother appeals the juvenile court's order selecting adoption as the permanent plan for her daughter Samantha H. Mother argues the juvenile court erred when it ordered adoption absent evidence in the record that the prospective non-relative adoptive parent was advised of and affirmatively rejected guardianship in favor of adoption.

We conclude the juvenile court appropriately ordered adoption and affirm the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

On July 17, 2017, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code[1] section 300, subdivision (b)(1) alleging jurisdiction over Samantha (then nearly four years old) and J.C., Jr. (then a newborn) based on J.C.'s positive test at birth for amphetamine and marijuana and Mother's drug use. The court detained Samantha from Mother and released J.C. to his father. Samantha was placed with M.W., the mother of Samantha's godmother. This appeal involves Samantha only.

On October 10, 2017, Mother pleaded no contest and the court sustained the petition as amended. The court ordered Mother to participate in a full drug/alcohol program, random drug testing, a 12-step plan, parenting classes, and individual counseling. Mother was ordered to participate in a reunification plan and she was granted monitored visits with Samantha.

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise stated.

Samantha thrived in M.W.'s care. At the six-month hearing in April, 2018, Mother had not followed through with the service providers. The court ordered more services and set a 12-month review for September 2018. Mother failed to appear at the 12-month hearing in September. The court found Mother's progress was "nonexistent" and terminated reunification services. The court set a selection and implementation hearing pursuant to section 366.26. The hearing occurred on July 9, 2019.

Mother failed to appear at the July 9, 2019 hearing. Among other documents and reports considered by the juvenile court was M.W.'s Caregiver Information form, filed March 19, 2019. This is a form caregivers complete to give information to the juvenile court about the child or children for whom they are caring. In the section marked "Recommendation for Disposition," M.W. wrote, "I plan to adopt Samantha . . . ." She filed a second form on July 8 2019, again informing the juvenile court that she wanted to adopt Samantha. A home study was approved and DCFS recommended termination of parental rights and adoption by M.W. Mother's counsel presented no evidence challenging DCFS's recommendation; her attorney objected to termination of parental rights based on Mother's initial interest in reunifying with her daughter, but acknowledged he had no recent direction from his client. Mother never argued DCFS or the juvenile court had an obligation to ensure that M.W. knew about and affirmatively rejected the option of guardianship. Because the issue was not raised, not surprisingly there is no discussion of or findings on that issue.

## DISCUSSION

A.  *Mother's Challenge to the Juvenile Court's Order of Adoption is Waived.*

At the selection and implementation hearing, Mother failed to object to the court's adoption order on the ground raised for the first time on appeal -- that M.W. had not been properly advised about the option of guardianship.  This argument is therefore waived.  (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1317; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502.)  Nonetheless, if we were to consider the merits of Mother's challenge, we would find the trial court acted properly.

B.  *The Trial Court Was Under No Obligation Sua Sponte To Inquire Whether M.W. Had Been Advised Of And Rejected The Option of Guardianship In Favor Of Adoption.*

Statutory interpretation calls for our independent review. *(In re K.H.* (2011) 201 Cal.App.4th 406, 415.)

At a selection and implementation hearing the court must order one of three permanent plans for the dependent child – adoption, legal guardianship or foster care.  Adoption is the permanent plan preferred by the Legislature.  (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1416; *In re Casey D.* (1999) 70 Cal.App.4th 38, 50.)  Freeing a child for adoption requires termination of parental rights.  To terminate parental rights, the court need only make two findings:  (1) there is clear and convincing evidence that the minor will be adopted; and (2) there has been a previous determination that reunification services were terminated.  (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249–250.)  Section 366.26, subdivision (c)(1) carves out exceptions to this preference for adoption, and the parent bears the burden of showing that one of the exceptions listed in section

4

366.26, subdivision (c)(1) applies. (*In re Anthony B.* (2015) 239 Cal.App.4th 389, 395.) Absent one of these exceptions, if the child is adoptable, the juvenile court must select adoption as the child's permanent plan. (*In re Jasmine T.* (1999) 73 Cal.App.4th 209, 213.)

Mother acknowledges Samantha is adoptable and likely to be adopted, as M.W. clearly expressed her desire to adopt the child. Mother does not challenge the court's determination denying reunification services. Indeed, Mother avers there "was no dispute that [M.W.]'s home was the right environment for raising Samantha" and "it was clear that Samantha should be living with [M.W.]" She also concedes none of the exceptions in section 366.26 apply.

Instead, Mother argues that both adoption and legal guardianship could provide a stable home for Samantha and it was error for the trial court to "foreclose the guardianship option." She wants us to create an additional requirement that the court must satisfy before ordering adoption as the permanent plan. Mother argues the record must reflect that either DCFS or the court advised the prospective non-relative adoptive parent of the guardianship option and that the prospective parent affirmatively rejected guardianship in favor of adoption.

Mother's relies on *In re Fernando M.* (2006) 138 Cal.App.4th 529. Her reliance is misplaced. In that case the child's caretaker grandmother preferred legal guardianship, but she was told she had to adopt her grandchild or face losing him to another adoptive family. (*Id.* at p. 532.) The court of appeal vacated the adoption order because it was in the child's best interest to remain with his grandmother, even if the placement was under a guardianship. (*Id.* at p. 539.) This result was also

5

prompted by one of the statutory exceptions to adoption in section 366.26, subdivision (c)(1) that permits the court to elect guardianship as the permanent plan in lieu of adoption where (1) a relative is unwilling to adopt but is willing to accept legal and financial responsibility for the child and is capable of providing the child with a stable and permanent environment; and (2) removal of the child would be detrimental to his or her emotional well-being.  (§ 366.26, subd. (c)(1)(B)(iv).)

Samantha's adoption does not involve a prospective adoptive parent who is also a caretaking relative.  The exception in subdivision (c)(1) does not apply; *In re Fernando M.* and its analysis is inapt.

Mother's next argument is that the juvenile court has an obligation to ensure that a prospective adoptive parent is fully informed of all options.  In this regard we note that the "Concurrent Planning Assessment" completed and filed by DCFS for the March 19, 2018 hearing states, "[Adoption Children's Social Worker (ACSW)] spoke to [M.W.] and discussed permanency plan for Samantha [H].  ACSW explained concurrent planning, *alternative placement options*, legal and financial rights and responsibilities of adopting parents and adoption homestudy process."  (Italics added.)  DCFS then reported to the court that M.W. "stated that she is interested in pursuing adoption of Samantha [H]."  We assume "alternative placement options" includes legal guardianship.  If this is an incorrect assumption, we remind Mother it was her burden at the trial court to present actual evidence to halt the adoption, i.e., to show that M.W. made an uninformed, coerced, or otherwise tainted decision.  (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.)  Mother has not shouldered that burden.

Further, we decline to compel the juvenile court, as a matter of course, to engage in a colloquy with non-relative adoptive parents to determine whether they prefer guardianship, or to otherwise ensure that the record shows an advisement about and affirmative rejection of the guardianship option where adoption is the Legislature's preferred permanency plan. Here the juvenile court considered, among other things, a Concurrent Planning Assessment, two Case Information Forms completed by the caregiver, and a 366.26 WIC Report, all of which discussed in detail the caregiver's wishes and DCFS's recommendations for adoption as the permanency plan. To require the juvenile court to engage prospective non-relative adoptive parents in an on-the-record colloquy akin to the taking of a plea in a criminal case is unnecessary.

We find no statute or case requiring the juvenile court to inquire whether a willing non-relative adoptive parent was advised of and then rejected the option of guardianship. And we decline to graft such a requirement onto the adoption protocol in light of the Legislature's preference for adoption as a dependent child's permanent plan. As one court has stated: "The Legislature has decreed . . . that guardianship is not in the best interests of children who cannot be returned to their parents. These children can be afforded the best possible opportunity to get on with the task of growing up by placing them in the most permanent and secure alternative that can be afforded them. In decreeing adoption to be the preferred permanent plan, the Legislature recognized that, 'Although guardianship may be a more stable solution than foster care, it is not irrevocable and thus falls short of the secure and permanent placement intended by the legislature.' " (*In re Beatrice M.*, *supra*, 29 Cal.App.4th at

p. 1419.) Where, as here, all statutory requirements to terminate parental rights have been met, the non-relative prospective adoptive parent has been clear and consistent in her willingness and desire to adopt the child, and the court has found the adoptive parent suitable and the child thriving in the adoptive parent's care and custody, we see no reason whatsoever to derail this adoption.

## DISPOSITION

The juvenile court's judgment is affirmed.

**CERTIFIED FOR PUBLICATION**


STRATTON, J.

We concur:



GRIMES, Acting P. J.



WILEY, J.