Filed 6/2/16  In re L.G. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re L.G., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D069266 |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1162) |
| v. | |
| C.T., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Terence M. Chucas, under appointment by the Court of Appeal, for Minor.

Thomas E. Montgomery, County Counsel, John E. Phillips, Chief Deputy, and Christa Baxter, Deputy County Counsel, for Plaintiff and Respondent.

Appellant C.T. appeals a juvenile court judgment terminating her parental rights to L.G., age 8, and selecting adoption as her permanent plan. (Welf. & Inst. Code, § 366.26; all further statutory references are to this code unless noted.) C.T. challenges the sufficiency of the evidence to support the court's finding that no exception to adoption preference applied, i.e., the beneficial parent-child relationship. (§ 366.26, subd. (c)(1)(B)(i); *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 (*Autumn H.*).)

Since the inception of the dependency proceedings, L.G. has been placed with the maternal grandparents, and C.T. has usually visited her on a weekly basis. C.T. agrees this placement is appropriate for L.G., but asserts the juvenile court erred in terminating her parental rights because her daughter is bonded to her and thus guardianship or long-term foster care was the better permanent plan. The record does not show any lack of supporting evidence for the judgment, or any abuse of judicial discretion, and we affirm.

I

*FACTUAL AND PROCEDURAL BACKGROUND*

A. Jurisdiction, Disposition, and Termination of Reunification Services

C.T., a 29-year-old single mother, was arrested in March 2014 after methamphetamine was found in her home in a place that was accessible to 6-year-old L.G. C.T. had started using drugs around age 15 and was currently using medical marijuana for headaches and sleep issues. Pursuant to section 300, subdivision (b), the San Diego County Health and Human Services Agency (Agency) filed a petition alleging that a substantial risk existed that L.G. would suffer serious physical harm or illness due to C.T.'s inability to care for her because of substance abuse. There had been six

2

previous referrals of the family involving domestic violence and drug issues (one of which was substantiated), before this petition was filed.

In April 2014, C.T. submitted the matter and the juvenile court made true findings on the petition. It declared L.G. a dependent, found her placement with C.T. would be detrimental, and placed her with the maternal grandparents (the grandparents), who were already involved in caring for her when C.T. was at work. Reunification services were ordered for C.T., including drug rehabilitation and monitored visitation. Paternity inquiries were pending for the biological father, M.G., who was living elsewhere and was not involved in L.G.'s life. A court appointed special advocate (CASA) was provided for L.G. in April 2014.

At the inception of the dependency case, C.T. attended a counseling and parenting program but was discharged several times for having positive drug tests. She then completed a five-day residential detoxification program. At the six-month review hearing in October 2014, the court made a finding that C.T. had not made substantial progress with her case plan, but it continued services, including supervised visitation. As of the end of 2014, C.T. was no longer attending drug rehabilitation programs, either because of unexcused absences, many positive drug tests, or misunderstandings.

In November 2014, the grandmother told social workers that C.T. did not call or visit when she said she would, and since that was hurtful to L.G., the grandmother had stopped telling her to expect contact with C.T., so that if it did happen, it would be a positive thing. In September 2014, C.T. had been referred to a structured weekly visitation program, Incredible Families, but was delayed in starting it until January 2015,

3

because she missed two sign-up appointments. She participated in the program through May 2015, but did not often visit outside of it. When she visited L.G. on Mother's Day, she had to leave, promising to return, but did not do so although she did call to say good night. L.G. appeared to be sad when her mother promised things and did not follow through.

In February 2015, C.T. started a new drug program. She was continuing with therapy but had missed several drug tests because of illness. She did not provide social workers with more than two doctor's notes to excuse her from drug testing.

At the 12-month review hearing in May 2015, the court found that C.T. had not made substantive progress with her case plan, particularly drug treatment. C.T. apparently lacked the ability to understand the impact of her drug use on L.G. or to see that L.G. needed to be with her more regularly. The court found that reunification services should be terminated and set a permanency planning hearing.

C.T. filed a request to challenge the orders of the juvenile court at the 12-month review hearing. (Cal. Rules of Court, rule 8.452.) However, this Court dismissed the case after C.T.'s attorney indicated there were no viable issues for review. (*C.T. v. Superior Court* (dism. July 8, 2015, D068183).)

### B. Permanency Planning Hearing and Ruling

The contested permanency planning hearing was held on November 17, 2015. (§ 366.26.) The Agency's assessment stated that L.G. was both specifically and generally adoptable. After May 2015, when the Incredible Families visitation program ended, C.T. had plans for weekly visits to be supervised by the grandparents, but the visits were

4

sporadic. Although the grandparents had no plans to break family ties with C.T., they preferred adoption and were not agreeable to a guardianship arrangement, because they thought having too many people involved in decisionmaking for the child was problematic. However, they continued to hope that C.T. could become a more consistent and positive presence in L.G.'s life, going forward.

The court allowed L.G.'s stipulated testimony to be presented, stating that for the past few months, she sees C.T. once or twice a week, not that often. L.G. gets kind of sad when C.T. is not there. L.G. thinks that C.T. is really nice but has a lot of work to do that the judge gives her. When L.G. lived with C.T., they had dogs that love L.G. very much, and she misses them and C.T. very much. "That's why she really wants to go back to [C.T.'s] house," where "she would hug [the] dogs [and] her mom and be happy all day."

In the CASA volunteer's report, she noted that during the summer months of 2015, C.T. visited L.G. between one and three times per month, canceling the other scheduled visits. L.G. became upset when her visits did not go as planned. The grandparents were doing an excellent job of supporting the relationship between C.T. and L.G.

C.T. did not testify, but argued she had continued to visit L.G. on a regular basis, usually weekly. L.G. loves her and wants her to continue being a part of her life, and it would likely be detrimental if those ties were severed. (§ 366.26, subd. (c)(1)(B)(i).) C.T. agreed that L.G. should not be removed from the grandparents' custody, but believed that guardianship would be more appropriate than an adoptability finding, for the same reasons. The biological father did not want to participate in the child's life but objected to an adoption finding, to support C.T.'s guardianship arguments.

The Agency disagreed with C.T. that she had adequately complied with the visitation and contact requirement, since L.G. often became disappointed and upset when C.T. missed visits or did not follow through on her promises. The Agency disputed the claim that the beneficial parental relationship exception to adoption should apply, and further argued guardianship should not be forced on the grandparents, because they believed adoption would be a better alternative. (§ 366.26, subd. (c)(1)(B)(i).)

At the close of the hearing, the court found L.G. was adoptable and the asserted parental relationship exception did not apply. The court commented that the case had been a roller coaster for L.G., because C.T.'s failure to visit regularly hurt the child emotionally. C.T.'s visits were few and far between before the Incredible Families program started in January 2015, after C.T.'s delay in signing up. When she did visit, she was loving and caring and engaged in positive activities, but there were inconsistencies and confusion in visitation, up to the present. L.G. seemed to have an idealized view of what it would be like if she moved back to live with her mother and the dogs. Because of these circumstances, L.G. had been required to process her mother's absence for quite a while, and seemed to be treating her like a beloved older sister. L.G. had otherwise been doing well in the grandparents' home during the past year and a half.

The court considered the consequences of a permanent plan short of adoption, noting that it would mean 10 more years of supervision and court hearings and monthly visits with the social worker. The court found such a plan would be a travesty because it would be disruptive and would not promote the stability and permanence that L.G. needs. The court took the wishes of both the child and the grandparents into account, but made

6

an independent decision based on the best interests of the child and the evidence, including the views of the social worker. Although L.G. would undoubtedly be sad and disappointed if C.T.'s parental rights were terminated, L.G. had already shown an ability to process her situation, including the ongoing absence of her mother from her life. It would not be detrimental to her to terminate parental rights and adoption was found to be in her best interests as the permanent plan.

C.T. appeals. L.G.'s appointed counsel filed a letter joining in the Agency's respondent's brief.

## II

### *TERMINATION OF PARENTAL RIGHTS*

#### A. Applicable Standards

The permanency planning hearing aims "to end the uncertainty of foster care and allow the dependent child to form a long-lasting emotional attachment to a permanent caretaker." (*In re Emily L.* (1989) 212 Cal.App.3d 734, 742.) The primary consideration at the hearing is the best interests of the child. (*In re Kerry O.* (1989) 210 Cal.App.3d 326, 333.) At the permanency planning hearing the court has numerous choices, with termination of parental rights and an order for the child to be placed for adoption, as the first choice. (§ 366.26, subd. (b)(1).) "Guardianship, while a more stable placement than foster care, is not irrevocable and thus falls short of the secure and permanent future the Legislature had in mind for the dependent child." (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1344.)

To support this beneficial relationship exception to adoption, the court must find "a compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1)(B); *In re C.F.* (2011) 193 Cal.App.4th 549, 553.) The juvenile court considers the detriment issue on a case-by-case basis, taking into account the many variables that can affect the parent-child relationship. (*Autumn H., supra,* 27 Cal.App.4th 567, 575-576; *In re J.C.* (2014) 226 Cal.App.4th 503, 532.) Among the variables to be considered in evaluating the benefits of a parental relationship are the child's age, the amount of time the child spent in the parent's care, whether the interactions are positive or negative, and whether the child has particular needs that the parent can satisfy. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467.)

The court in *In re J.C., supra*, 226 Cal.App.4th at pages 530 to 531 applied a substantial evidence standard of review to the preliminary factual issues of regular visitation and contact, and whether the parent proved there was a beneficial parental relationship with the child. However, as to the weighing test under section 366.26, subdivision (c)(1)(B)(i), in which the juvenile court balances the parent-child relationship against the benefits the child would derive from adoption, the appellate court opined that the abuse of discretion test may apply to evaluate this " ' " 'quintessentially' " discretionary decision.' " (*In re J.C., supra,* at p. 531*; In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.) Based on the respective showings, the court must balance "the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer." (*Autumn H., supra,* 27 Cal.App.4th at p. 575.)

C.T. objects that this analytical approach adds more criteria to the court's decision than the statute requires. We disagree, because the juvenile court must determine if "a compelling reason" exists to find termination would be detrimental to the child, as part of applying the statutory criteria. (§ 366.26, subd. (c)(1)(B).) It is appropriate to apply the substantial evidence test to the juvenile court's findings on those criteria regarding the beneficial parental relationship exception. (*Autumn H., supra*, 27 Cal.App.4th at pp. 575-577.) We make presumptions in favor of the judgment, while viewing the evidence in the light most favorable to the Agency and giving the judgment the benefit of all reasonable inferences. (*In re C.F., supra,* 193 Cal.App.4th at p. 553; *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

## B. Visitation Requirement

"Regular visitation and contact" are statutory threshold requirements for a claim that a beneficial parental relationship has been maintained. (§ 366.26, subd. (c)(1)(B)(i).) C.T. contends she regularly visited with L.G. on a weekly basis. The Agency argues that C.T.'s efforts to maintain contact and visitation were insufficient, especially since L.G. often became disappointed and upset when C.T. did not come or call when she said she would. C.T. had never progressed to unsupervised or overnight visits. Although L.G. was usually glad to see C.T., the social worker who observed recent visits noticed that L.G. looked to the grandmother for guidance if problems arose. During weekly visits in October 2015, L.G. sometimes got frustrated or angry with her mother and argued or left the room, and the grandmother, not C.T., was able to get her to return.

In making its ruling, the juvenile court examined whether the criterion of regular visitation had been met, noting there was not much case authority stating how regular "regular" should be. On a commonsense basis, the court believed that C.T. had not "regularly" visited within the meaning of the statute, because she had been told time and time again it was hurtful to the child when she did not show up, but she continued to miss visits and disappoint the child, which was hurting the parental connection.

However, the court went on to assume for the sake of argument that the regular visitation prong had been met, and analyzed the record, including visitation, in terms of the best interests prong. This was an appropriate approach and we shall do likewise.

### C. Application of Criteria: Substantial Benefit Prong

The evidence showed that L.G. is likely to be adopted, either by the grandparents or other approved local families wishing to adopt a child with such characteristics. C.T. contends she demonstrated there was a beneficial parental relationship, precluding adoption. (§ 366.26, subd. (c)(1)(B)(i); *Autumn H., supra,* 27 Cal.App.4th at p. 575.) We first assess the showing on L.G.'s substantial benefit from continuing her parental relationship with C.T. (*Zachary G.*, *supra*, 77 Cal.App.4th at pp. 810-811.) After that, we examine C.T.'s contention that guardianship, not adoption, would best promote the child's best interests.

The juvenile court found that while L.G. loves her mother and enjoys their interactions, whatever benefit being conferred upon her by this contact was greatly outweighed by L.G.'s need for stability. The grandparents had successfully provided L.G. with a protective and loving environment, including participation in school and

10

outside activities. C.T. had been unable to maintain visitation in a consistent way that created positive aspects to their relationship that outweighed the benefits to L.G. of a permanent placement in such an adoptive home. C.T. did not appear to occupy a parental role in L.G.'s life, seeming to act more like an older sister who was consistently unable to make the needs of the child a priority over her own needs. (*Autumn H., supra,* 27 Cal.App.4th at pp. 575-576; *In re C.F., supra,* 193 Cal.App.4th at pp. 558-559 [parent cannot establish applicability of parent-child beneficial relationship exception by showing the child derives only incidental benefits from maintaining parental contact].)

At the hearing, the social worker testified that if C.T.'s parental ties were severed, it was possible that L.G. might benefit from therapy to assist her in addressing her feelings or confusion on the subject. However, he also noted that L.G. was asking fewer questions about her mother as time passed, and she seemed to be able to deal with her ongoing separation issues. L.G. did not have appear to have special needs that only C.T. could satisfy. (*In re Angel B., supra,* 97 Cal.App.4th at pp. 467-468; *Autumn H., supra,* 27 Cal.App.4th at pp. 575-576.) Although the juvenile court made an independent decision on the detriment issue, it was entitled to credit the assessments and conclusions of the social workers. (*In re Casey D.* (1999) 70 Cal App.4th 38, 53.) The evidence supported a conclusion that continuing the parental relationship would keep L.G. in limbo, which was contrary to her needs for stability and permanence.

On the planning choices, the court was made aware that the grandparents favored adoption over guardianship, but they were willing to allow continued family contact between L.G. and C.T. Although C.T. contends legal guardianship should have been

11

selected as L.G.'s permanent plan, the juvenile court is subject to the mandatory preference for adoption over legal guardianship. (§ 366.26, subd. (b)(1); *In re Fernando M.* (2006) 138 Cal.App.4th 529, 536 [preference for adoption over other permanent plans is overridden only if statutory exception applies].)

In *In re Fernando M.*, *supra*, 138 Cal.App.4th 529, 535, the court was discussing a different exception to the adoption preference, in which a relative or foster caregiver is unable or unwilling to adopt the child because of "exceptional circumstances." (§ 366.26, subd. (c)(1)(D).) There, the grandmother had physical custody of the child and wanted to keep him in the home, but she and the grandfather did not want to adopt. The appellate court found the juvenile court had applied the improper test when deciding that guardianship for the grandmother was inappropriate under those circumstances. Removing the child for adoption by another would not promote the statutory purposes of stability and would be detrimental to the child. (*In re Fernando M.*, *supra*, at p. 537.)

In L.G.'s case, the juvenile court could reasonably conclude on this record that adoption by the grandparents, her long time caregivers, would best promote the statutory purposes of stability and permanence. (§ 366.26, subd. (b)(1).) C.T.'s preference for a guardianship or long term foster care order, over adoption, is not supported by the record. The evidence demonstrated that L.G. would be best served by having decisions made for her by the people that lived with her and cared for her. There was no apparent need for further involvement by the Agency, which would entail another 10 years of ongoing court supervision of any guardianship or foster care order. The juvenile court had a substantial basis in the evidence to interpret the beneficial relationship exception to adoption as

12

inapplicable to this case and to select this permanent plan.  (*Autumn H., supra,* 27 Cal.App.4th at pp. 575-576; *In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 947.)

## DISPOSITION

The judgment is affirmed.


_____

HUFFMAN, J.

WE CONCUR:


_____

McCONNELL, P. J.


_____

NARES, J.