Filed 10/25/24  In re R.M. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re R.M., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D084247 |
| Plaintiff and Respondent, | (Super. Ct. No. J521075) |
| v. | |
| J.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Alexander M. Calero, Judge.  Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

1

J.M. (Mother) appeals an order terminating her parental rights to her son, R.M., now four and one-half years old, and selecting a permanent plan of adoption for him pursuant to Welfare and Institutions Code section 366.26.[1] Mother contends the court erred by finding that the beneficial parent-child relationship exception did not apply to preclude the termination of her parental rights and selection of adoption as R.M.'s permanent plan. (§ 366.26, subd. (c)(1)(B)(i).) Based on our reasoning below, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2020, R.M. was born to Mother and A.H. (Father). In August 2022, the San Diego County Health and Human Services Agency (Agency) filed a section 300, subdivision (b) petition alleging there was a substantial risk that R.M. would suffer serious physical harm or illness as a result of his parents' inability to supervise or protect him adequately because of their methamphetamine abuse. At his detention hearing, the court found that the Agency had made a prima facie case on its petition, detained R.M. in out-of-home foster care, and granted supervised visits for his parents.

At the contested jurisdiction and disposition hearing, the Agency recommended that the court make a true finding on the petition's allegations, declare R.M. a dependent of the court, place him in out-of-home foster care, and grant the parents reunification services and supervised visits. It also proposed case plans for Father and Mother, which plans included participation in an outpatient substance abuse program, on-demand drug testing, and a parenting education program. The court made a true finding on the petition and adopted the Agency's amended recommendations, declared R.M. a dependent of the court, placed him in confidential foster care,

_____

[1] All statutory references are to the Welfare and Institutions Code.

ordered the Agency to provide Father and Mother with reunification services consistent with their case plans, and ordered them to comply with their case plans.

At the contested six-month review hearing in June 2023, the court found that both Mother and Father had made adequate progress toward alleviating or mitigating the causes necessitating R.M.'s placement out of the home. The court ordered that Mother and Father continue to be provided with reunification services.[2]

After the six-month review hearing, Mother continued to have consistent supervised visits with R.M., but did not make progress in substance abuse treatment or random drug testing. His caregivers reported that R.M. exhibited dysregulation after visits with his parents.

At the contested 12-month review hearing in December 2023, the Agency noted the parents' lack of progress toward mitigating the original protective issue. The court adopted the Agency's recommendations and terminated the parents' reunification services and set a section 366.26 hearing.

In its initial section 366.26 report in April 2024, the Agency stated that Mother had consistently and regularly visited R.M. throughout his dependency case and that those visits were positive. Its report included detailed descriptions of Mother's recent supervised visits with R.M. The Agency stated that R.M. experienced some emotional dysregulation and

_____

[2] R.M. appealed the June 2023 order. We affirmed that order, concluding that, contrary to R.M.'s contention, there was substantial evidence to support the juvenile court's finding that Father had made adequate progress toward alleviating or mitigating the causes necessitating R.M.'s placement out of the home. (*In re R.M.* (Oct. 6, 2023, D082386) [nonpub. opn.].)

nightmares following visits. The Agency stated that R.M. was specifically and generally adoptable and his current caregivers wished to adopt him.

The Agency stated that despite Mother's consistent visits with R.M., he did not have a substantial, positive, and/or emotional attachment to her. During visits, Mother brought snacks and cleaned up and then spent a large amount of time just observing R.M. interact with his sister. R.M. was affectionate with Mother and his sister "upon request," but showed no signs of distress and separated easily when it was time for him to leave. He did not look to Mother for his daily needs, but instead looked to his caregivers to meet his needs and for comfort. The Agency stated that R.M. deserved love, nurturing, stability, permanency, and a family to call his own. It believed that the benefits to R.M. of adoption "far outweigh[ed]" any detriment that he would suffer from the termination of Mother's parental rights. Furthermore, any detriment that R.M. might suffer from the termination of Mother's parental rights could be mitigated by ensuring he remained in a loving and stable environment and, if needed, referral for therapeutic services. Accordingly, it recommended that the court terminate the parents' parental rights and select a permanent plan of adoption for R.M.

In its June addendum report, the Agency continued its recommendations set forth in its April section 366.26 report. The Agency stated that Mother's consistent visits with R.M. had not led to a significant parent-child relationship. It stated that for at least one to two days after visits with Mother, R.M. required extra care, redirection, soothing, and emotional support from his caregivers. Furthermore, he did not ask for Mother between his visits with her. It reported that for the past two years R.M.'s caregivers had been consistently committed to meeting his physical, emotional/mental, health, educational, and developmental needs.

On June 5, 2024, the court held a contested section 366.26 hearing, admitted in evidence the Agency's reports, and heard the testimony of Mother. The court found that R.M. was specifically and generally adoptable and that it was likely he would be adopted if parental rights were terminated. It found that none of the exceptions listed in section 366.26, subdivision (c)(1), including the beneficial parent-child relationship exception, applied to preclude the termination of parental rights. The court found that it was in R.M.'s best interest to be adopted and therefore terminated Mother's and Father's parental rights and selected adoption as R.M.'s permanent plan. Mother timely filed a notice of appeal, challenging the court's June 5, 2024 order.[3]

## DISCUSSION

### I

*Beneficial Parent-Child Relationship Exception Generally*

"If the court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a hearing under section 366.26." (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).) "[W]hen the court orders the section 366.26 hearing, reunification services have been terminated, and the assumption is that the problems that led to the court taking jurisdiction have not been resolved." (*Ibid*.) The purpose of a section 366.26 hearing is to determine and implement the appropriate permanent plan for a dependent child. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) The juvenile court can choose among three permanent plans: adoption, legal guardianship, and long-term foster care. (§ 366.26, subd. (b).) When a child is adoptable, adoption is the preferred permanent plan unless

---

[3]     Father has not appealed the June 5, 2024 order and is not a party to this appeal.

there are countervailing circumstances or adoption is not in the child's best interest.  (*In re Heather B.* (1992) 9 Cal.App.4th 535, 546; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 574 (*Autumn H.*).)

At a section 366.26 hearing, it is the parent's burden to show an exception to termination of parental rights.  (*In re Fernando M.* (2006) 138 Cal.App.4th 529, 534; *In re Erik P.* (2002) 104 Cal.App.4th 395, 401.) One exception is when the juvenile court finds "a compelling reason" for determining that termination of parental rights would be "detrimental" to the child because the "parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)  The California Supreme Court has clarified that the "compelling reason" language does not impose on the parent any burden beyond the requirement to show termination of the beneficial relationship would be "detrimental" to the child.  (*Caden C.*, *supra*, 11 Cal.5th at p. 635.)

*Caden C.* stated that under section 366.26, subdivision (c)(1)(B)(i), a parent has the burden to show, by a preponderance of the evidence, three things:  (1) "regular visitation and contact with the child;" (2) "the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship;" and (3) "terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home."  (*Caden C.*, *supra*, 11 Cal.5th at p. 636.)  Specifically, in making the determination of whether the beneficial parent-child relationship exception applies, the juvenile court "balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and sense of belonging a new family would confer.  If severing the natural parent/child relationship would deprive the child of a substantial, positive

6

emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) Because interaction between a child and his or her parent will generally confer some incidental benefit to the child, the parent must prove the child will benefit to such a degree as to overcome the preference for adoption. (*Ibid*.) The beneficial parent-child relationship exception is not established simply by a showing of a parent's frequent and loving contact and relationship with their child. (*In re J.C.* (2014) 226 Cal.App.4th 503, 529.) Some of the factors the juvenile court should consider when determining whether the parent-child relationship is important and beneficial are: (1) the age of the child; (2) the portion of the child's life spent in the parent's custody; (3) the positive or negative effect of interaction between the parent and the child; and (4) the child's particular needs. (*Caden C.*, at p. 632; *Autumn H.*, at p. 576.)

On appeal, we apply a hybrid standard in reviewing a juvenile court's determination whether the beneficial parent-child relationship exception applies. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–641; *In re J.C.*, *supra*, 226 Cal.App.4th at pp. 530–531.) We apply the substantial evidence standard of review to the factual issues of maintenance of regular contact and visitation and the existence of a beneficial parent-child relationship, and the abuse of discretion standard to the determination of whether there is a compelling reason for finding that termination would be detrimental to the child. (*Caden C.*, at pp. 639–641; *In re J.C.*, at pp. 530–531.) Under the substantial evidence standard of review, we consider the evidence, and make all reasonable inferences therefrom, favorably to support the court's order and disregard contrary evidence as not accepted by the court as having sufficient veracity or persuasiveness. (*Caden C.*, at p. 640; *In re S.B.* (2008)

164 Cal.App.4th 289, 297–298 (*In re S.B.*).) Under the abuse of discretion standard of review, we determine whether the juvenile court's decision exceeded the bounds of reason, and, in so doing, we cannot substitute our view for that of the juvenile court. (*Caden C.*, at p. 641; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 (*Stephanie M.*).)

II

*The Court Did Not Err by Finding the Beneficial Parent-Child Relationship Exception Did Not Apply in This Case*

Mother contends that the juvenile court erred by finding she did not carry her burden to show the beneficial parent-child relationship exception applied to preclude the termination of her parental rights and selection of adoption as R.M.'s permanent plan. In particular, she argues the evidence shows that she satisfied the second and third prongs of the test for that exception.

A

At the contested section 366.26 hearing, the court admitted in evidence the Agency's reports (as described above) and heard the testimony of Mother. Mother testified that during her visits with R.M., she brought food for him to eat and she described their interactions as: "We play. We laugh. We hug. We talk. We have very interesting conversations. My daughter comes with me to the visits, and they play and eat together as well." When Mother arrived at a visit, R.M. smiled, started to walk faster, and immediately wanted to eat. He was happy to see Mother and his sister. He called Mother, "mommy." R.M. did not handle the end of his visits well. He acted up, started to throw things, got loud, started to run, and acted rambunctiously. Mother testified that she felt R.M. loved her and was bonded to her and cited a couple of instances during which he would go to her car and climb into her

8

car at the end of the visits, thinking he was going home with her. She testified that R.M. had talked to her about coming home. At times, R.M. hugged Mother and his sister and did not want to let them go.

Following closing arguments of counsel, the court explained that after reunification services are terminated, adoption is the Legislature's preferred permanent plan for a dependent child. It stated that Mother had the burden to show the beneficial parent-child relationship exception applied to preclude the termination of her parental rights and selection of adoption as R.M.'s permanent plan. It described the three prongs of that exception. On the first prong, the court found that Mother had carried her burden to show that she maintained regular visitation and contact with R.M. On the second prong, the court found that Mother had *not* carried her burden to show that R.M. had a substantial, positive, emotional attachment to Mother. In so finding, the court stated that it considered various factors, including R.M.'s age, the portion of his life spent with Mother, and the positive or negative effects of interactions between Mother and R.M. It noted that R.M. had not been in Mother's care since he was two years old and had had only supervised, albeit consistent, visits with Mother. It further noted that R.M. enjoyed his visits with Mother, but did not look to her to meet his needs. During visits, Mother observed R.M. interacting with his sister, rather than having more direct engagement with him. Also, after visits, R.M. became dysregulated.

On the third prong, the court found that Mother had not carried her burden to show that the detriment to R.M. of the termination of her parental rights outweighed the benefits to him of adoption (e.g., stability). Accordingly, the court found that the beneficial parent-child relationship exception did not apply to preclude the termination of Mother's parental rights and selection of adoption as R.M.'s permanent plan. The court further

9

found that the sibling-bond exception did not apply to preclude the termination of Mother's parental rights. Therefore, the court terminated Mother's and Father's parental rights and selected adoption as R.M.'s permanent plan.

B

Mother argues that the juvenile court erred by not properly considering the factors set forth in *Caden C., supra*, 11 Cal.5th 614 in finding the beneficial parent-child relationship exception did not apply to preclude the termination of her parental rights and selection of adoption as R.M.'s permanent plan. First, she argues, and the Agency concedes, that the court correctly found that she had met the first prong of the three prongs of the *Caden C.* test for the beneficial parent-child relationship exception—i.e., that she had maintained regular visitation and contact with R.M. (*Caden C.*, at p. 636.)

On the second prong, Mother argues that substantial evidence does not support the court's finding that she had not met that prong—i.e., that R.M. would benefit from continuing his relationship with Mother. (*Caden C., supra*, 11 Cal.5th at p. 636.) In support of her argument, she cites to portions of the Agency's reports and her testimony, which evidence showed she and R.M. have a safe, loving, and appropriate relationship. That evidence also showed he called her "mommy." During their visits, she played with R.M., read to him, and brought toys and they laughed and hugged each other. He regularly talked about going home with her. At the end of their visits, R.M. did not want to say goodbye, acted up, and experienced distress. Mother argues that evidence showed R.M. has a positive attachment to her and therefore she met the second prong of the *Caden C.* test.

However, by citing only evidence and inferences therefrom that supports her position, Mother misapplies the substantial evidence standard that we apply in reviewing the court's finding that she had not met the second prong. As discussed above, in applying the substantial evidence standard of review, we consider the evidence, and make all reasonable inferences therefrom, favorably to support the court's order and disregard contrary evidence as not accepted by the court as having sufficient veracity or persuasiveness. (*Caden C.*, *supra*, 11 Cal.5th at p. 640; *In re S.B.*, *supra*, 164 Cal.App.4th at pp. 297–298.) It is not our function on appeal to second-guess the juvenile court's decision, reweigh the evidence, or evaluate the credibility of witnesses. (*Caden C.*, at p. 640; *Stephanie M.*, *supra*, 7 Cal.4th at p. 319.) Furthermore, as discussed above, *Caden C.* stated that the second prong requires the parent to show the child has a substantial, positive, emotional attachment to the parent. (*Caden C.*, at p. 636.) Here, we conclude there is substantial evidence to support the court's finding that R.M. did not have a beneficial relationship with Mother within the meaning of section 366.26, subdivision (c)(1)(B)(i) and *Caden C.* The evidence admitted at the hearing showed that R.M. was then four years old and had spent about one-half of his life out of Mother's care. The Agency reported that during R.M.'s visits with Mother, he spent more time playing with his sister than interacting with Mother. He did not look to Mother for his daily needs. At the end of his visits, he did not exhibit distress or sadness and separated easily. After visits with Mother, he became emotionally dysregulated for one or two days. Between visits with Mother, R.M. did not cry or ask for her. Although the record shows that Mother and R.M. clearly love each other and there may have been substantial evidence to have supported a contrary finding by the court, we conclude that there is substantial evidence to support

11

the court's finding that R.M. did not have a substantial, positive, emotional attachment to Mother and therefore she did not meet the second prong of the *Caden C.* test. (*Caden C.*, *supra*, 11 Cal.5th at p. 636.)

On the third prong, assuming arguendo Mother had met the second prong, we nevertheless conclude the court did not abuse its discretion by finding the benefits to R.M. of adoption outweighed the benefits he would receive in continuing his relationship with Mother. As discussed above, the court weighed the benefits to R.M. of adoption (e.g., stability) against the detriment to him of terminating his relationship with Mother. In so doing, the court acknowledged that R.M. would likely feel some loss during his life because of the termination of his relationship with Mother, but noted that therapy could help him with that feeling of loss. Furthermore, the court considered the Agency's section 366.26 report. The Agency stated that R.M. deserved love, nurturing, stability, permanency, and a family to call his own, which adoption would presumably give him. The Agency believed that the benefits to R.M. of adoption "far outweigh[ed]" any detriment that he would suffer from the termination of Mother's parental rights. It believed that any detriment that R.M. might suffer from the termination of Mother's parental rights could be mitigated by ensuring he remained in a loving and stable environment and, if needed, referral for therapeutic services. The Agency recommended that the court terminate the parents' parental rights and select a permanent plan of adoption for R.M. Based on the record in this case, we conclude that the court did not abuse its discretion by concluding the benefits to R.M. of adoption outweighed the detriment to him from the termination of his relationship with Mother and therefore finding that Mother had not met the third prong of the *Caden C.* test. (*Caden C.*, *supra*, 11 Cal.5th at p. 636; cf. *Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) Contrary to Mother's

12

conclusory and unsupported assertion, there is nothing in the record showing that the court "failed to properly apply the *Caden C.* factors." To the extent Mother cites evidence or inferences that would have supported a contrary finding by the court on the third prong, she misapplies the abuse of discretion standard of review.

Because, as discussed above, the court did not err by finding that Mother did not carry her burden to show she met the second and third prongs of the *Caden C.* test, we conclude that the court properly found that Mother did not carry her burden to show that the beneficial parent-child relationship exception applied to preclude the termination of her parental rights and selection of adoption as R.M.'s permanent plan. (§ 366.26, subd. (c)(1)(B)(i); *Caden C., supra*, 11 Cal.5th at p. 636.)

DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

KELETY, J.

13